## BRIDGERS v. HOWELL.

1. At common law, the services of a wife belong to her husband, and therefore her earnings—the acquisitions made by such services—also belong exclusively to the husband; and there is nothing in the constitution or statutes[1] of this State to affect this common law principle.

2. Where a husband purchases property in his wife's name with her earnings, the property so purchased may be subjected to the payment of debts of the husband, then existing.

3. The Court of Common Pleas has no original jurisdiction to set off a homestead, but it has jurisdiction in the course of a proceeding otherwise properly before it, to adjudicate simply the right to homestead.

4. Where a debtor puts his money into a house and lot purchased from another, but has the deed made to his wife, his creditors have the right to follow these funds, but have no right to the property itself.

5. In such case there is no resulting trust to the husband, for he intended a gift, and therefore he has no estate in the property, either legal or equitable, out of which he is entitled to claim a homestead.

6. It may be that a homestead may be claimed in real estate to which the debtor has only an equitable title.

7. Where a debtor uses his own money in the purchase of a lot of land in his wife's name and for her benefit, his creditors cannot follow and subject to their claims so much of this money as the debtor was entitled to retain as his personal property exemption.

8. Defendant cannot, on appeal, demand that the proceeds of sale should go to all his creditors and not to the plaintiff only, when no such point was raised on Circuit, no demurrer interposed for defect of parties, and no application made by defendant to require other creditors to be called in.

---

[1] This decision was rendered prior to the act of December, 1887 (19 *Stat.*, 819), which declares: "Sec. 2. That all the earnings and income of a married woman shall be her own separate estate and shall be governed by the same provisions of law as apply to her other separate estate."— REPORTER.

Before COTHRAN, J., Darlington, October, 1886.

This was an action by P. L. Bridgers, doing business as P. L. Bridgers & Co., against Edward Howell and Margaret E., his wife. The opinion fully states the case, but it may be added that the earnings of the wife in this case were derived from keeping a boarding-house and restaurant, selling ice cream, and sewing.

*Mr. J. T. Barron*, for plaintiff.

*Mr. B. O. Townsend*, contra.

October 29, 1887.   The opinion of the court was delivered by

MR. JUSTICE MCIVER. The plaintiff, having recovered a judgment against the defendant, Edward Howell, the execution upon which had been returned *nulla bona*, instituted this action for the purpose of subjecting to the payment of his debt certain real estate, consisting of a house and lot in the town of Florence, upon the ground that the same was purchased with the money of said Edward Howell, though the title was made to his wife, the defendant, Margaret E. Howell. It seems that Edward Howell negotiated the purchase of the house and lot from John Kuker, who regarded him as the purchaser, for the sum of eleven hundred dollars, of which five hundred dollars was to be paid in cash and the balance on a credit, secured by bond and mortgage. On November 10, 1880, the cash portion of the purchase money was paid by the Rev. J. E. Wilson in the name of Margaret E. Howell, and the title taken in her name, the balance of the purchase money being secured by her bond and mortgage.

The case was referred to a referee to hear and determine all the issues, who made his report, finding, with some hesitation, that the purchase of the property was made in good faith by Margaret E. Howell, and that the cash portion of the purchase money was paid by her out of her own earnings, which he held she was entitled to, both against her husband and his creditors ; but that the credit portion of the purchase money was paid with the funds of Edward Howell, who, being in debt at the time, his

creditor could follow the same into the property in which such funds had been invested in the name of his wife. He also disallowed a claim for homestead set up by Edward Howell, and recommended that the plaintiff have judgment: 1st. That Margaret Howell pay to the clerk of the court within thirty days the sum of six hundred dollars (the credit portion of the purchase money), with interest thereon from November 10, 1880, to be by him applied first to the payment of plaintiff's costs and the expenses of this action, and next to the plaintiff's judgment. 2d. That, in default of such payment, the property be sold and the proceeds, after deducting the expenses of the sale, be applied, first, to the payment to Margaret E. Howell of the sum of five hundred dollars, without interest, and the balance, to the extent of six hundred dollars, and interest, be applied to the payment of plaintiff's costs and expenses and to the payment of plaintiff's judgment, and the surplus, if any, should be held subject to the further order of the court.

To this report both parties excepted and the case was heard by Judge Cothran upon the report and the exceptions thereto. He held that the earnings of a married woman, derived from her own labor and services, belong to her husband, and therefore all the money used in paying for the house and lot belonged to the defendant, Edward Howell, and the same is liable for his debts, except to the extent of any claim of homestead that he may successfully maintain. As to this point, he held that Edward Howell having paid the purchase money and taken title in the name of his wife, there was a resulting trust in his favor, and that he was entitled to a homestead in such an estate; but inasmuch as the Court of Common Pleas has no jurisdiction to assign and set off a homestead, he simply adjudged: 1st. That Edward Howell, as the equitable owner of the house and lot in question, was entitled to a homestead exemption therein. 2d. That he do, within a time limited, institute such proceedings as he may be advised are requisite for the purpose of having his homestead assigned and set off to him, and that upon his failure so to do the property be sold. 3d. That in the event of such sale, the proceeds be applied, first, to the payment of the costs of this action, and the balance be held subject to the claim of Edward Howell to

homestead, "to the extent of one thousand dollars, under the further order of this court as to that sum and any residue that may be over." 4th. That in case the defendant, Edward Howell, shall perfect his claim to homestead in the said premises, then out of any surplus that there may be, the costs of this action be first paid, and the balance, if any, be applied to plaintiff's judgment. 5th. That the deed from John Kuker to Margaret Howell be declared null and void, except in so far as it shall operate to take the title out of John Kuker, and that the same be delivered up to the clerk to be by him cancelled, and that the clerk do make any deeds which may be necessary to carry out the provisions of this judgment.

From this judgment both parties appeal upon the several grounds set out in the record, but which need not be set out in detail here, as they raise, substantially, but three questions : 1st. Whether the earnings of a married woman, derived from her personal services or labor, belong to her husband. 2d. Whether Edward Howell is entitled to any claim of homestead. 3d. If so, whether he can claim to the extent allowed in real estate, or only to that allowed in personal property.

As to the first question, we agree entirely with the Circuit Judge. There can be no doubt that, at common law, the earnings of a married woman, derived from her personal services, belonged exclusively to her husband. This, we believe, is universally conceded, and therefore the only inquiry is whether this long established and well settled doctrine of the common law has been changed, either by constitutional provision or by statute law. Our constitutional provision upon the subject of the rights of married women relates exclusively to her rights of *property*, and does not even purport to make any change whatever in the *status* of a married woman, or in the personal relations existing between herself and her husband. It gives her no new property. It does not declare that anything shall be her property which would not have been so previous to the adoption of the constitution; but it simply secures to her the property which she may have at the time of her marriage, or may thereafter acquire, by exempting it from liability for her husband's debts, and by vesting in her the uncontrolled disposition of such property.

As was said by Mr. Justice McGowan in *Pelzer, Rodgers & Co.* v. *Campbell & Co.* (15 *S. C.*, at page 596) : "The main object of the provision in the constitution seems to have been, not so much to declare the rights of *the wife*, as to negative those of *the husband* in regard to her property—not to *enable her*, but to disable *him and his creditors.*" And as is said in *Townsend* v. *Brown* (16 *S. C.*, at page 96), in speaking of this constitutional provision : "The real purpose, therefore, does not appear to have been to confer any new powers upon a married woman by changing her legal status, but simply to protect her property from liability for her husband's debts and to release it even from the partial control of the husband, by dispensing with the necessity, which had previously existed, of obtaining his assent and concurrence before her property could be disposed of. These seem to have been the sole purposes of the clause in question, and as they can be fully accomplished without in any manner affecting any of the other relations between husband and wife growing out of marriage, we think we are bound to confine the operation of this clause of the constitution to its declared and manifest objects."

Now if, as we have seen, the earnings of a married woman, prior to the adoption of the constitution, never were the property of the wife, but belonged exclusively to the husband; and if, as we have also seen, there is nothing in the constitution which takes away this property from the husband and confers it upon the wife, it follows necessarily that such earnings still belong to the husband, unless some change has been made by the statute law. The statute relied on for this purpose will be found in sections 2035, 2036, and 2037. Certainly there is nothing in either of these sections which even purports to make that which unquestionably belonged to the husband at common law the property of the wife. They simply enlarge the powers of the wife over her own property, without undertaking to invest her with property previously belonging to her husband. Indeed, so far from these sections containing a single word intimating a purpose to take away from the husband his well settled right to the personal earnings of his wife, the language of the proviso to section 2037 would rather seem, impliedly at least, to recognize such right upon the part of the husband. That proviso reads as follows :

"Provided that the husband shall not be liable for the debts of
the wife contracted prior to or after their marriage, *except for
her necessary support.*" This leaves the liability of the husband
for the support of his wife the same as it was at common law,
and would seem to imply that the intention of the legislature was
to leave his correlative right to his wife's earnings unimpaired;
for the common law doctrine of the husband's right to his wife's
services and earnings seems to rest, in part at least, upon his
obligation to support her; and, therefore, as long as such obliga-
tion continues to rest upon him, the corresponding right should
be recognized.

As is well said by Ruffin, J., in discussing a similar question
in the case of *Syme* v. *Riddle*, 88 *N. C.*, 463: "There is certainly
nothing in the constitution or the statute which, in terms, or by a
necessary implication, secures to a married woman her separate
earnings; and by nothing short of a plain expression of such an
opinion of such an intention could this court be induced to give
them that construction. If entitled, as a matter of right, to her
own earnings, then must she be entitled to the time and oppor-
tunity necessary to make them; and that is to say that she may,
at her own election, and without the consent of her husband, for-
sake her domestic duties and go out to labor for another for the
purpose of acquiring earnings for her separate use. There can
be no middle ground taken in the matter; for the one right, if
admitted, necessarily draws to it the other, and we cannot suppose
that those who framed the organic law or the statute intended
to introduce any such anomalous conditions into the law regu-
lating the relations of husband and wife in this State. Certainly
there is nothing in the words used in either instrument to war-
rant such a supposition, and much less to force it upon the
courts."

It is argued, however, that the language of the constitution[1]
declaring that "the real and personal property of a woman held
at the time of her marriage, or that which she may thereafter
*acquire*, either by gift, grant, inheritance, devise, or *otherwise*,"
is broad enough to cover acquisitions made by a married woman's
labor. That is quite true, but this argument assumes the very point

[1] Article XIV., section 8.

in issue, to wit, that a married woman's personal services belong to herself, and not to her husband, whereas the reverse of this proposition was undoubtedly true at common law, and, as we have seen, neither the constitution nor any statute has made any change in the common law doctrine. Hence, as the services of the wife belong to her husband, all acquisitions made by such services belong to him also.

From this it follows that both in fact and in law the whole of the purchase money of the premises in question was paid by Edward Howell, and he being in debt at the time to the plaintiff, the property so purchased and given to his wife can be subjected to the payment of such debt, regardless of whether he had any actual fraudulent intent in so doing, upon the principle that a man must be just before he is generous—a principle fully recognized by the present constitution, when it declares in the proviso to section 8, art. XIV., securing the rights of married women, "that no gift or grant from the husband to the wife shall be detrimental to the just claims of his creditors." Here the husband did undertake to make a gift·to his wife of property purchased with his own funds, which should have been applied to the payment of his debts, and his wife cannot acquire any rights thereby "detrimental to the just claims of his creditors." It is clear, therefore, that there was no error on the part of the Circuit Judge in adjudging that the property in question was liable for the debts of Edward Howell.

The next inquiry is as to the right of homestead. While it is quite true that the Court of Common ·Pleas has no original jurisdiction of a proceeding *to assign or set off a homestead* (*Ex parte Lewie*, 17 *S. C.*, 153; *Scruggs* v. *Foot*, 19 *Id.*, 274; and *Myers* v. *Ham*, 20 *Id.*, 522), yet, as was said in *Munro* v. *Jeter* (24 *S. C.*, 29), it does not follow that the Court of Common Pleas has no jurisdiction to determine simply *the right* to homestead, where, in the course of some proceeding properly before it, it becomes necessary to adjudicate *the right* of homestead, leaving the party to enforce such right by a proper proceeding before the appropriate tribunal. This seems to have been the view adopted by the Circuit Judge, for he simply determined the

question of right, and by his judgment made provision for the enforcement of such right by a proper proceeding.

So that the questions for us to determine are, whether the Circuit Judge erred in adjudging that Edward Howell was entitled to homestead, and if not, whether he erred in adjudging that said Howell was entitled to the amount of exemption allowed in real estate, or whether he should not be confined to the amount allowed in personal property. Inasmuch, however, as it is contended that Edward Howell has already been allowed his personal property exemption as against the plaintiff's judgment, and the referee so found (upon what seems to us rather slender evidence of that fact—the statement in the testimony of Edward Howell, that when the sheriff went to his store he "found nothing above homestead," which is scarcely sufficient to show that any personal property had been set off to Howell as exempt under the homestead laws, but would rather seem to indicate that the sheriff made no levy because he supposed that the amount of personal property which he found in the store would not be equal to the amount of the exemption allowed); and inasmuch as the Circuit Judge made no ruling upon this point, it being unnecessary for him to do so under the view which he took, we do not propose to decide anything as to the question whether Howell has already been allowed his personal property exemption, but we propose to leave that question, as well as the question not alluded to in the argument—whether the plaintiff's debt or a part thereof was contracted before or after the ratification of the amendment of 1880 to the constitution, whereby a person could claim an exemption in any species of personal property and is not limited to the specific articles named in the constitution as originally adopted—to be considered and determined when Howell institutes the proper proceeding to have his homestead exemption assigned to him, as permitted to do by the judgment of the Circuit Judge. We shall therefore confine ourselves to the inquiry, whether the fact that the house and lot was bought with the funds of Edward Howell, though the title was taken in the name of his wife, will exclude his claim of homestead in such house and lot; and if so, whether he will be thereby excluded from claiming a personal property exemption in the money used in making the purchase.

It will be observed that this is not a case where a debtor has conveyed *real estate*, to which he had the legal title, to another as a gift, which operated as a fraud upon his creditors, for here Howell never had the legal title to the property ; but it is a case where a debtor has invested his money, to which his creditors had the prior right, in certain real estate which he has had conveyed to his wife as a gift, to the prejudice of the rights of his creditors, and they, therefore, have the right to follow *that money* into the property. They have no right to *the property*, because it never belonged to their debtor; but they have a right to the funds of their debtor which did belong to him, improperly invested in such property, and they may, if necessary, have the property sold for the purpose of getting out of it that to which they have a right.

The Circuit Judge held that the purchase money having been paid by the husband and the title taken to the wife created a resulting trust—an equitable estate—in which he would be entitled to claim a homestead. While it may be true that, under the present constitution, a homestead may be claimed in real estate to which the debtor has only an equitable title (*Munro* v. *Jeter*, 24 S. C., 29), we are not prepared to admit that Howell had any equitable estate in this property, either by way of resulting trust or otherwise. In *Hill on Trustees*, \*91, it is said that a resulting trust arises "where, upon a purchase of property, the conveyance of the legal estate is taken in the name of one person, while the consideration is given or paid by another, *the parties being strangers to each other*" (italics ours). Accordingly we find that the same author, at page \*97, says that where a father purchases property and takes title in the name of his child, the transaction will be regarded as an advancement for the child, and not a trust for the parent, unless it can be shown to have been the intention of the parent that the child should not take beneficially. And at page \*98, he says the same doctrine of advancement applies equally in the case of a purchase by the husband in the name of his wife, the presumption in all such cases being that a gift, and not a resulting trust, was intended. The same doctrine is laid down in 2 *Story Eq. Jur.*, sections 1202 and 1204. Now, as there is not the slightest evidence that there

was any intention on the part of Edward Howell to create a resulting trust in his own favor, but, on the contrary, it is manifest that a gift was intended, we cannot agree that any resulting trust in favor of Edward Howell arose, whereby he was invested with an equitable title to the property. If, then, Edward Howell never had any estate either legal or equitable in the property, we do not see how it is possible for him to claim the exemption allowed in *such property*, and hence we think the Circuit Judge erred in holding that he would be entitled to a homestead exemption in the house and lot to the extent of one thousand dollars—the amount allowed in property of that character.

The remaining inquiry is, whether Edward Howell is precluded from claiming the personal property exemption to the extent of five hundred dollars (if otherwise entitled thereto), by reason of the fact that he gave the purchase money of the house and lot to his wife, in fraud of the rights of his creditors. When it is remembered that the only reason why the plaintiff has a right to subject the property in question to the payment of his debt, is the fact that the funds of his debtor, which he had a right to have applied to the payment of his debt, have been used in the purchase of the property, it would seem to follow necessarily that, if the creditor had no right to have the whole or any part of such funds applied to his debt, he could not follow the funds, or so much thereof as were beyond his reach while in the hands of the debtor, after they had been invested in the property. Hence if any part of the purchase money shall prove to be necessary to make up Edward Howell's personal property exemption (provided he is otherwise entitled to such exemption), the plaintiff has no more right to subject such part of the purchase money to the payment of his debt, than if the same had remained in the hands of his debtor. There can be no fraud, either actual or constructive, in a debtor putting beyond the reach of the ordinary process of law funds or property which by law are exempt from the payment of debt, for the reason that the creditor is not thereby deprived of any right or impeded in the enforcement of it. See 1 *Story Eq. Jur.*, section 367.

This question, so far as we are informed, has never been decided in this State, but it has been the subject of judicial deci-

sion elsewhere, and the very decided weight of authority is in favor of the view which we have adopted. In *Derby* v. *Weyrich* (8 *Neb.*, 174, reported also in 30 *Am. Rep.*, 827), it was held that land purchased with property exempt from the payment of debt, and conveyed to the debtor's wife, could not be subjected to the payment of his debts, the court saying : "The right of the defendant in error (the creditor) to have the land sold and applied to the payment of his debt, if he have any, must be founded upon his right to the fund with which it is purchased. As he had no right to the fund, it having been placed beyond his reach by the law, he has no right to disturb the possession of the land in the hands of Ida H. Derby," who was the wife and donee of the debtor. See also the case of *Ruohs* v. *Hooke*, 3 *Lea* (Tenn ), 302, reported also in 31 *Am. Rep.*, 642, and especially, as reported in a note to that case, the opinion of Staples, J., in *Boynton* v. *McNeal*, 31 *Gratt.* (Va.), 456.

What we have said relates only to the right of the creditor to subject so much of the purchase money of the house and lot as may be necessary to make up Edward Howell's personal property exemption, to the extent of five hundred dollars, provided he shall prove to be otherwise entitled to the same, and is not designed to conclude any claim which Margaret E. Howell may set up against her husband to so much of the purchase money as may prove to be exempt under his gift to her. So far as appears, she makes no such claim and we decide nothing in reference to it.

As to the third ground of appeal[1] taken by defendants, it is sufficient to say that no such question appears to have been presented to or decided by the court. There was no demurrer for defect of parties, and no application requiring plaintiff to amend by bringing in other creditors. Indeed, it does not appear that there are any other creditors, though it does appear that plaintiff is the only judgment creditor.

The judgment of this court is, that the judgment of the Circuit Court be modified in accordance with the views herein announced,

---

[1] "That his honor erred in holding that the net proceeds of the suit should go to the plaintiff instead of to such creditors as should be called in and allowed to prove claims and share expenses."

and that the case be remanded to that court for such further proceedings as may be necessary to carry into effect such views.