Blair v. Smith et al.

Filed March 10, 1888.

No. 13,007.

BLAIR v. SMITH ET AL.

TRUST.—Debtor and Creditor.—Husband and Wife.—Fraudulent Grantee.—Where a husband, with intent to defraud his creditors, pays purchase-money liens upon his wife's real estate, she having knowledge of and participating in his fraudulent purpose, she occupies the position of a fraudulent grantee, and is chargeable in equity as a trustee of the husband's creditors to the extent of the sum so paid, and they may reach the money in either the land or the avails of a sale.

SAME.—Where a husband, to defraud his creditors, gives money to his wife, who yields no consideration and who accepts the money with knowledge of his fraudulent purpose, she is chargeable as a trustee, and may be compelled to account as such at the suit of the husband's creditors.

SAME.—Equitable Relief.—When Granted.—There being, under the code of this State, but one form of action, equitable relief will be granted whenever the facts well pleaded demand it.

FRAUDULENT CONVEYANCE.—Exemption from Execution.—There can not be a fraudulent conveyance of property which is exempt from execution.

ATTACHMENT.—Affidavit.—Quashing Proceedings.—An affidavit in attachment, which fails to show that the property sought to be reached is subject to execution, is not sufficient, and the proceedings may be quashed.

From the DeKalb Circuit Court.

*J. E. Rose, J. W. Baxter* and *W. L. Penfield,* for appellant.
*J. I. Best, C. A. O. McClellan* and *D. A. Garwood,* for
appellees.

ELLIOTT, J.—The facts, as stated by the first paragraph
of the complaint, are these : Norman Smith was the debtor
of Benjamin Blair in the sum of one thousand dollars, for
which judgment was recovered. , Executions were issued and
returned no property found. Prior to the time the judgment
was rendered, the wife of Norman Smith, Julietta, owned
eighty acres of land, and as part of the purchase-money she
agreed to pay liens on the land amounting to the sum of one
thousand dollars. This sum the husband paid, although he
then had no property subject to execution, as his wife knew.
He paid the money with the fraudulent intent of cheating
his creditors, of which fact his wife had knowledge, and to
enable him to defraud his creditors colluded with him to effect
that purpose. Since it was paid she has sold the land, and
has, as the complaint charges, possession of the avails of the
sale, and has in her possession one thousand dollars above
the value of her interest,as the trustee of his creditors.

The appellant's counsel, with much force and plausibility,
argue that, as Mrs. Smith occupies the position of a fraudu-
lent grantee, and colluded with her husband to defraud his
creditors, she is liable, in the character of a trustee, to ac-
count to them for the amount over and above the value of
her interest in the land.

It is now settled, whatever of error may have crept into
some of our decisions, that a judgment creditor has a lien
only on the interest of the debtor in the land, and that against
such a creditor prior equities will prevail. *Glidewell* v.
*Spaugh,* 26 Ind. 319; *Monticello, etc., Co.* v. *Loughry,* 72
Ind. 562; *Hays* v. *Reger,* 102 Ind. 524; *Foltz* v. *Wert,* 103
Ind. 404, and cases cited ; *Wright* v. *Tichenor,* 104 Ind. 185,
and cases cited ; *Wright* v. *Jones,* 105 Ind. 17 (28); *Heberd*

v. *Wines,* 105 Ind. 237 (242) ; *Taylor* v. *Duesterberg,* 109 Ind. 165.

It is clear, therefore, that the interest that Mrs. Smith had in the land is superior to the appellant's claim. We do not, however, understand the appellant's counsel to controvert this doctrine, but their position is, that the creditor has a right to charge her with the money in her hands received from the sale, after deducting the value of her interest in the land. The husband, as against her, acquired no interest in the land, but as against creditors the money belonging to him which went into the land can be reached in equity, because, as the complaint alleges, the wife put it there to defraud creditors.

Whether the husband could, or could not, impair the interest of the wife if she had not actively participated in the fraud, is not the question ; but the question is, can the money that went into the land by the fraud of both husband and wife be followed by the creditors of the husband? This is the question the record presents. We think it clear that in equity the creditors may pursue the money into the land. Suppose, for example, that the price of the land was two thousand dollars, and that the wife paid only ten dollars of this sum, and the husband, colluding with the wife in a fraudulent scheme to defraud his creditors, paid nineteen hundred and ninety dollars, could not a judgment creditor reach the money thus fraudulently put into the land? We are unable to see why the money of the husband may not be subject in equity to the claims of his creditors, in the case supposed, nor can we perceive any difference between the supposed case and the actual one.

The question here is very different from that presented in *French* v. *Sheplor,* 83 Ind. 266. In that case the beneficiary sought to secure land bought by the trustee, but partly paid for with trust funds. Here the charge is that the wife colluded with the husband to defraud his creditors, and, to carry into execution their corrupt scheme, she suffered him to use

his money in paying for the land. If, at the time the land was purchased, this had been done, no one would doubt that the husband would have acquired an interest in the land which a judgment creditor might subject to the payment of his debt. We can discern no difference between a case where the husband and wife conspire to defraud creditors prior to the purchase of property, and a case where the conspiracy is not formed until after the purchase of the land. Our conclusion on this branch of the case is, that when the husband, pursuant to the corrupt scheme, invested one thousand dollars in the land, he acquired, as against creditors, but not as against the wife, an interest upon which equity will fasten the lien of the judgment, but that the lien did not displace the prior equity of the wife.

If our conclusion is correct, then as long as the wife remained the owner of the land the husband, in equity, and as in favor of a judgment creditor, owned an interest in the land, subject to the lien of the judgment, as against one who had conspired with him for the purpose of defrauding creditors. If this be not true, then a debtor may collude with another to defraud his creditors, and by investing money in the land carry into execution a corrupt scheme, and enable the debtor to evade the payment of his debts. Equity will not permit this.

Approaching the question from a somewhat different point, we arrive at the same conclusion. If the money paid on the price of the land belonged to the debtor, equity would have compelled him to pay it to his creditor, and from this rule he can not escape under cover of a fraudulent collusion with the owner of the land. No one can reap any advantage from a fraud. As the money to which equity gave the appellant a claim went into the land, into the land equity will follow it. " Equity regards that as done which ought to have been done," and upon this maxim rests many of the most salutary rules of equity, and among them that of equitable conversion. It is no more beyond the power of a court of equity

to reach the money in the land than it would have been had the money been fraudulently placed in the hands of Mrs. Smith, to be there kept for the corrupt purpose of defrauding her husband's creditors.

Our statute goes very far in condemnation of schemes to defraud creditors, and denounces as void all contracts made for that purpose. Sections 2156, 4920, R. S. 1881. Land fraudulently conveyed is subject to the judgment, by express provision of our statute. R. S. 1881, section 752; *Hanna* v. *Aebker*, 84 Ind. 411.

As held in the case cited, where a person purchases or acquires an interest in land, and, for the purpose of defrauding creditors, does not take title, equity will treat that as having been done which ought to have been done, and, in favor of creditors, will treat the purchaser as having title.

Counsel for the appellees are in error in treating Mrs. Smith as the mere debtor of her husband. The complaint does not proceed upon that theory. It proceeds on the theory that, by reason of the fraudulent collusion with her husband, she obtained property which in equity and good conscience should be applied to the debt due from her husband to the appellant. She is not sought to be held as his debtor. She is sought to be held as the trustee of her husband's creditor. It is a principle quite as well established as any in equity jurisprudence, that a grantee who fraudulently accepts a conveyance of land for the purpose of enabling the grantor to defeat his creditors, takes the land as the trustee of the creditors. This doctrine is so well settled that it is scarcely necessary to cite authorities in its support. *Eiler* v. *Crull*, 112 Ind. 318; *Eve* v. *Louis*, 91 Ind. 457; *Jones* v. *Reeder*, 22 Ind. 111. If, therefore, Mrs. Smith had retained the land, she might undoubtedly have been charged as the trustee of her husband's creditors to the extent of his interest in the land. Whether this would be so if there were no actual fraud we need not inquire, for there was here not only knowledge of the fraudulent intent

of the husband, but the wife actively assisted him in carrying into execution his fraudulent purpose by conspiring with him to defeat his creditors. Whatever may be the rule where the wife simply permits her insolvent husband to advance money to pay for her land, the rule in a case like this, where she is a guilty actor in the fraud, is, that she can not defeat the claim of her husband's creditors, although the creditors can not destroy her prior equities. The element of actual fraud we regard as an important one in all the phases of the case. We decide the case as it is presented to us by the complaint, and upon the facts there alleged and admitted by the demurrer, and that case is one of direct positive fraud, and not merely legal or constructive fraud.

We conclude, without hesitation, that, had the wife remained the owner of the land, equity might have charged her as holding it in trust to the extent of the money fraudulently put into it by her husband, and we are now to inquire whether, as to the avails of the sale in her hands in excess of her interest in the land, she can be required to account to her husband's creditor as a trustee. We have already alluded to the doctrine of equitable conversion, and we now apply it to the money in the hands of Julietta Smith. As to the creditors, equity may treat that money as it would have treated the land had the title remained in her. We are not willing to hold that the change in the character of the property changed the equities of the parties. Suppose that, instead of getting money for the land, Mrs. Smith had exchanged it for another parcel of land, might not the appellant have reached the husband's interest in that land? It seems clear to our minds that the change from one parcel of land to another would not have destroyed the appellant's equity, and, surely, the change from one species of property to another can not affect the principle involved. On the soundest ground of equity, as we think, the rights of the appellant followed the money from the land into the hands of Mrs. Smith. If this be true, then she must be regarded

as holding it as the trustee of the appellant and in no other capacity.

In equity she has no right to the money. She does not, therefore, hold it in her own right. She is not the debtor of her husband, because, as between parties, a fraudulent con-- veyance is valid. She is not the debtor of her husband, be-- cause there was neither an implied nor an express promise to repay him, for she received the money as an actor in the cor- rupt scheme to defraud his creditors. There is, therefore, but one capacity in which she can hold, and that is as the trustee of the creditors. If she holds it in that capacity, then in that capacity she can be compelled to account. Rea- soning solely on principle, this conclusion seems inevitable, and it is the conclusion which the authorities sustain.

In the case of Clements v. Moore, 6 Wall. 299, the Supreme Court of the United States held that "A purchaser of a stock of goods from a debtor confessedly insolvent, where the pur- chaser knows that the debtor's purpose is to hinder and delay a particular creditor, and also that if the debtor intended a fraud on his creditors generally, the purchase would neces- sarily be giving him facilities in that direction, is not respon-- sible in equity (the sale being an open one, for a fair price, and followed by a change of possession) for any part of the consideration money which the debtor had applied to pay- ment of his debts; but is responsible for any part which he has diverted from such payment."

The question was very fully and carefully discussed in Ferguson v. Hillman, 55 Wis. 181, and it was said: "The reason and justice of this rule are apparent when we consider the effect of any different rule upon the rights of the cred- itors. If the fraudulent grantee can be protected for the amount actually paid by him at the time of the fraudulent transfer, then this would happen: The fraudulent debtor could make a sale with intent to avoid the payment of his debts, take the money and leave the country, and the pur- chaser have knowledge that he intended to do so, and yet be

protected for the money so paid and appropriated. A rule which would lead to such results can not be tolerated by courts. The rule as above stated has been recognized and adopted by this as well as other courts. *Gardinier* v. *Otis,* 13 Wis. 460; *Stein* v. *Hermann,* 23 Wis. 132; *Avery* v. *Johann,* 27 Wis. 246; *Union Nat'l Bank* v. *Warner,* 12 Hun, 306; *Briggs* v. *Merrill,* 58 Barb. 389; *Fullerton* v. *Viall,* 42 How. Pr. 294; *Goodhue* v. *Berrien,* 2 Sandf. Ch. 630, 636. See also a long list of authorities upon this question cited by Mr. Bump in his work on Fraudulent Conveyances, p. 198, note 2; May Stat. Eliz. 73, 74. If the fraudulent grantee in possession of the property of the debtor can not be protected for the money or other consideration he may have given for the transfer, as against the creditors of such debtor, it would seem to follow as a necessary consequence, that such grantee can not be protected in the possession of the proceeds of such property received by him on a sale thereof. The property in the hands of the fraudulent purchaser is held by him in trust for the creditors of his fraudulent vendor, and when the property is converted into money the money is impressed with the same trust. The original conveyance being void as to creditors, no title as to them ever passed to the grantee; and if he sells it and receives the money, he must hold the money for the benefit of the creditors. In equity such money in the hands of the fraudulent grantee is held for the benefit of the creditors; and, although they may not be able to maintain an action at law for money had and received for their use, because they were never the owners of or had the title to the property which has been converted into such money, yet a court of equity, having all the parties interested before it, may make such order as to the application thereof as would be just."

In *Williamson* v. *Williams,* 11 Lea, 355, the court said: "It does appear that Wallace purchased fraudulently, and disposed of this land to aid his father-in-law in evading the payment of his debt, and sold to Terry with intent to avoid

the complainant's claim. He swears he received the price of the property to the amount of seven thousand dollars. He shows he had received this money, and this fact is beyond question. Having deprived complainant of this land, and having obtained its price, he must be held responsible by reason of this fraudulent disposition of the land, to be liable to the complainant's claim to the amount of the consideration received. This money stands for the land in his hands, and he can not escape liability by having disposed of the land. It was so held in the case of *Marsh* v. *Wills & Swan*, Thompson's Cases, overruling the case of *Tubb* v. *Williams*, 7 Hum. 366, and the same principle, also, in *Coleman* v. *Satterfield*, 2 Head, 265. These cases have been several times affirmed since."

The point of the decision in *Fullerton* v. *Viall*, 42 How. Pr. 294, is, as stated in the head notes, this: "If, before the judgment is obtained, the land be conveyed to a *bona fide* purchaser, the land is not subject to the lien of the judgment, but in equity the creditor's lien attaches to the fund or proceeds received by the fraudulent grantee."

The court, in *Smith* v. *Sands*, 17 Neb. 498, gave the question careful consideration and held the fraudulent grantee liable, saying, among other things: "The law requires the debtor to act in good faith with his creditors, and apply his property not exempt, if need be, to the payment of his debts. If he attempts to evade this duty, and for the purpose of hindering or defrauding his creditors by transferring his property to another without consideration, or with knowledge on the part of the grantee of the fraudulent intent, such grantee will take the property charged with the trust, and if he converts the property into money he will be liable for its value, less any valid lien subsisting against it. And as the court administers both law and equity it should adapt the relief to the facts proved, and if need be permit an amendment of the prayer of the petition for that purpose."

A similar principle was declared in *Murtha* v. *Curley*, 90

N. Y. 372, where it was said: "Under the circumstances of this case, judgment for the recovery of the precise sum of money claimed was the proper judgment; and the form of the judgment does not stamp this as a legal, rather than an equitable action. A court of equity adapts its relief to the exigencies of the case in hand." At another place the court said: "Even if something was honestly due from Doyle to Curley, on account of the fraud, Curley could not retain the property, or use its proceeds against a pursuing creditor."

Stronger still is the case of *Post* v. *Stiger*, 29 N. J. Eq. 554, where the wife sold the property fraudulently conveyed to her, and as a defence insisted that she had lost the money received in bad bargains; but the court denied the validity of this defence, saying: "She held the property as trustee of her husband's creditors, and dealt with it at her peril."

Mr. Bump says: "The grantee is construed to be a trustee for the creditors, and as such is responsible for all his acts in disposing of the property fraudulently conveyed to him. If he has parted with it he must account for the value." Again he says: "A court of equity follows the proceeds of the property and affords a remedy by turning the legal owner into a trustee for the benefit of creditors." Bump Fraud. Conv. (3d ed.) 608, 609.

We feel quite sure, after a very careful search, that no case can be found, in which the question was fairly presented, where it has been held that the fraudulent vendee will not be held liable in equity. Counsel have cited us to none, and in our search we have found none.

We are careful to say that no case can be found where an appeal to a court of equity for relief against a fraudulent grantee in such a case as this was made in vain, for we are aware that there are cases holding that relief can not be awarded by a court of law. Even on that question, however, there is much conflict, and the better reason, if not the greater number of cases, is in favor of the rule that for the

tort an action will lie.    But with that phase of the question we are not now concerned.

The appeal for relief in this case was made to a court of equity, for all our courts are courts of equity.    It matters not under our code what the form of the action, if the facts stated sustain the theory on which the complaint proceeds, and entitle the plaintiff to the relief he seeks.    Of this there can be no doubt on principle or authority. 1 Pomeroy Eq. Jur., section 287 ; Pomeroy Remedies, section 71 ; *Quarl* v. *Abbett*, 102 Ind. 233 (52 Am. R. 662).

The Supreme Court of Massachusetts has gone as far as any other court in ruling that an action at law can not be maintained against a fraudulent grantee who converts the land conveyed to him and appropriates the proceeds.    *Bradley* v. *Fuller*, 118 Mass. 239.    But as to suits in equity the principle asserted by the decisions of that court are essentially different.    *Hooper* v. *Hills*, 9 Pick. 435.

In *Tasker* v. *Moss*, 82 Ind. 62, the doctrine of the Massachusetts court, as to actions at law, seems to have been approved and applied to a case somewhat similar to the present. It is obvious that an important element was overlooked in that case, and that is, that, under the code, there is only one form of action, and that equitable relief will be granted whenever the facts well pleaded demand it.    But we need not now express any opinion upon the merits of that decision ; all that need be said is that, granting it to be well decided, it does not apply here, for there, as it was expressly stated in the opinion, Thomas, the fraudulent grantee, " transferred the certificate to Miller, without receiving anything himself."    Here the fraudulent grantee receives and holds the consideration received.    The cases we have already referred to clearly show the principle upon which the courts proceed in such cases as this, and, in showing this, show that on the plainest principles of equity the fraudulent grantee must account for what he has in his hands as the avails of the sale, or he must pay the value of what he retains.    This

principle is strikingly illustrated by the case of *Reeg* v. *Burnham*, 55 Mich. 39.

What we have said disposes of the questions presented by the first paragraph of the complaint, for the ultimate conclusion established is, that property subject to execution may be followed by creditors, although changed in kind, into the hands of one who occupies the position of a fraudulent grantee, and results in holding that paragraph to be good.

The second paragraph of the complaint alleges the indebtedness of Norman Smith to the appellant, alleges that he had no property subject to execution, alleges that his wife knew that fact, and that she knew of his intent to defraud his creditors; it alleges that he gave her eight hundred dollars for which no consideration was yielded, and that she accepted it, knowing the corrupt purpose of her husband, and that she now holds it as trustee for his creditors, and has never accounted for it.

We think the principle we have stated applies to this paragraph of the complaint as well as to the first. Mrs. Smith received the money as trustee, and as such must account for it. If she had received a stock of goods from her husband pursuant to a corrupt scheme to defraud his creditors, she certainly could have been charged as trustee. The fact that she received one species of property rather than another can make no difference. The governing principle is the same, no matter what kind of property the fraudulent participant in the positive wrong receives. Mr. Pomeroy asserts, what is well known to be the law, that a fraudulent grantee takes as trustee, and says : " The lien upon the original articles will extend to the resulting fund or the substituted goods." 3 Pomeroy Eq. Jur., section 1291. This is the underlying principle which everywhere prevails. May Stat. of Eliz. 10 ; Wait Fraudulent Conveyances, section 385.

The plaintiff is, therefore, right in proceeding, as he does, upon the theory that the fraudulent grantee is a trustee, and as such may be called upon to account for the trust funds.

Damages in the form of compensation are always allowed in equity where no other form of relief is adequate. 1 Pomeroy Eq. Jur., sections 112, 237. This rule is often applied in cases against trustees for an accounting, and between partners, as well as in suits for specific performance where performance can not be enforced. Pomeroy Eq. Jur., sections 181, 1410; 2 Story Eq. Jur. (13th ed.) 133.

As the question comes to us upon the facts alleged in the complaint, and as the only cause alleged for the demurrer is that the complaint does not state facts sufficient to constitute a cause of action, what we have said leads to the conclusion that the trial court erred in holding the complaint bad.

No error was committed in quashing the attachment proceedings, for the affidavit is insufficient. It is not shown in the affidavit, as the law requires, that the property sought to be reached was subject to execution. R. S. 1881, sec. 819. It is only property subject to execution that a creditor can assert a claim against. If the property is not subject to execution, the debtor has an absolute right of disposition, with which creditors can not interfere. It is, therefore, no answer to the objection to aver that the property was fraudulently conveyed, for if it was not subject to execution, creditors can not be heard to aver that the debtor made a fraudulent disposition of it. Mr. Wait carries this doctrine to the extent of holding that the debtor may exchange property which is not exempt for property that is exempt, and hold the property thus obtained as against creditors. Fraud. Conv., section 47. He is well supported by authority: *O'Donnell* v. *Segar*, 25 Mich. 367; *Randall* v. *Buffington*, 10 Cal. 491; *Morrison* v. *Abbott*, 27 Minn. 116; *McFarland* v. *Goodman*, 6 Biss. 111; *Vogler* v. *Montgomery*, 54 Mo. 577; *Cox* v. *Wilder*, 2 Dill. 45; *White* v. *Givens*, 29 La. Ann. 571; *Muller* v. *Inderreiden*, 79 Ill. 382; *Hugunim* v. *Dewey*, 20 Iowa, 368. But the case before us is much clearer than those referred to.

Property exempt from execution is not subject to any

Blair v. Smith et al.

claim of the creditor, but is absolutely free from all claims of creditors. No execution or other writ is a lien upon it. The creditor has no claim upon it in any form, and it is impossible to conceive any logical ground upon which property not subject to the claims of creditors can be held to have been fraudulently conveyed. If creditors have no interest in the property, it is inconceivable that they can justly claim that in disposing of it the debtor has been guilty of fraud. The whole doctrine of annulling fraudulent conveyances rests upon the ground that the creditor has a right to resort to the property, and where he has no such right it is impossible that a conveyance can be deemed fraudulent. Surely, a man may do what he will with property which is his own, free from all claims of creditors. Our later decisions establish this doctrine, and it is the only doctrine defensible on principle. *Dumbould* v. *Rowley*, 113 Ind. 353; *Eiler* v. *Crull, supra*; *Barnard* v. *Brown*, 112 Ind. 53; *Taylor* v. *Duesterberg*, 109 Ind. 165; *Faurote* v. *Carr*, 108 Ind. 123; *Burdge* v. *Bolin*, 106 Ind. 175 (55 Am. R. 724).

The cases elsewhere declare and enforce this doctrine in its fullest extent: *Sannoner* v. *King*, 5 S. W. Rep. 327; *Bridgers* v. *Howell*, 3 S. E. Rep. 790; *Buckley* v. *Wheeler*, 52 Mich. 1; *Derby* v. *Weyrich*, 8 Neb. 174 (30 Am. Rep. 827); *Union Pacific R. W. Co.* v. *Smersh*, 36 N. W. Rep. 139. In the case last cited the question arose in an attachment proceeding, and the court laid down the general principle as we declare it, and applied it as we apply it.

Judgment reversed, with instructions to overrule the demurrer to the complaint.

Filed March 6, 1888.

## MEMORANDUM.

NIBLACK, J.—The rule undoubtedly is that the law devotes all the property of a debtor, subject to execution, whether real or personal, to the payment of his debts. If, therefore, a debtor, instead of paying his debts with it, uses

his personal property, subject to execution, upon the real estate of another, so that it becomes a part of such real estate, for the purpose of defrauding his creditors and preventing them from obtaining satisfaction of their demands out of his property, with the knowledge and consent of the owner of the real estate, a judgment creditor may follow the property into the hands of the owner of the real estate thus benefited, and fasten his judgment upon such real estate to the extent of the debtor's fraudulent investment in it, where, by reason of the nature of the transaction, no debt, express or implied, is created between the debtor and the owner of the realty. This rule was very aptly formulated and restated in the case of *Isham* v. *Schafer*, 60 Barbour, 317, and is approved in Wait on Fraudulent Conveyances, at section 26.

The rule in question was at first, however, only recognized as extending to the realty in which the fraudulent investment had been so made, and not, therefore, to the proceeds after its sale.

I agree, nevertheless, that the weight of modern authority favors the extension of the rule so as to enable a judgment creditor to reach the proceeds in the hands of the owner of such realty, after he has sold and conveyed it to an innocent purchaser. But one judgment creditor in such a case has no prior right or claim to such proceeds over another similarly situated. Where there are several claimants to the proceeds, a good case for a creditor's bill to adjust the equities between them is presented. *Hanna* v. *Aebker*, 84 Ind. 411 ; Pomeroy Eq. Juris., section 1413, *et seq.*; Wait, *supra*, sections 60, 68.

I think the cases of *Tasker* v. *Moss*, 82 Ind. 62, and *French* v. *Sheplor*, 83 Ind. 266 (43 Am. R. 67), were correctly decided upon the facts upon which they respectively rest.

With these additional remarks, I concur generally in the conclusion announced as above.

Filed March 6, 1888.