In the matter of Steven W. AGNEW,
Debtor-Appellee.

LEE SUPPLY CORPORATION,
Plaintiff-Appellant,

v.

Steven W. AGNEW, Defendant-Appellee.

No. 86–1716.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1986.
Decided April 20, 1987.

Sidney Mishkin, Mishkin, Cromer, Eaglesfield & Maher, Indianapolis, Ind., for plaintiff-appellant.

William E. Limeberry, Wilson, Limeberry & Tandy, Greenwood, Ind., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and PARSONS, Senior District Judge.*

PARSONS, Senior District Judge.

Lee Supply Corporation appeals from Steven W. Agnew's discharge in bankruptcy. We find no error and affirm.

Most of the facts are undisputed. In 1979, Steven Agnew and Michael Zachary formed Consolidated Plumbing, Inc., and began to do business as plumbing contractors. To fund this business, Steven and his wife Shirley borrowed $10,000, securing it by a second mortgage on their residence in Noblesville, Indiana. Consolidated Plumbing obtained credit on an open account with Lee Supply, and by February of 1981 it owed Lee Supply over $12,000. At this time, Lee Supply sought and obtained from Consolidated a note payable to it in the amount of $12,116.84. It also obtained separate personal guarantees from both Agnew and his partner Michael Zachary to assure the payment of Consolidated's debt to Lee Supply.

In March of 1982 Lee Supply sued Agnew, Zachary and Consolidated Plumbing, and on June 15, 1982 it was awarded judgments against all three defendants. Consolidated's debt to Lee Supply had mounted, and the judgment against Agnew was in the amount of $23,985.17. Meanwhile, the plumbing business went from bad to worse, and in 1982 Consolidated Plumbing filed for bankruptcy and was liquidated. This left only Agnew and Zachary as judgment debtors. In November of 1982 Steven Agnew began making $100.00 a month payments on his debt to Lee Supply. It was Shirley Agnew who furnished the money to make most of these payments. She

---

* The Hon. James B. Parsons, Senior District Judge for the Northern District of Illinois, is sitting by designation.

did this out of income she was earning as a dental hygienist.

In April of 1983 the Agnews sold their house in Noblesville for $61,500.00. The net proceeds of the sale, after paying off the first and second mortgages and deducting the expenses of the sale, were $28,-295.77. Though this property had been held by Steven and Shirley as an entirety, the check for the net proceeds was issued to Shirley alone. She in turn used the proceeds to pay for the construction of another house on a piece of land she individually owned, also in Noblesville. Shirley holds title to this real estate solely in her name.

The $100.00 monthly payments to Lee Supply continued until July of 1983. By then, Steven Agnew had become employed again, and Lee Supply, seeking a quicker satisfaction of its judgment against Steven, had his wages garnished for over $200.00 per month. Then, on March 8, 1984, almost eleven months after the Agnew's sale of their home, Steven filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code and sought discharge from his debts, including his debt to Lee Supply.

On June 22, 1984, Lee Supply filed a creditor's complaint in the bankruptcy proceeding objecting to Steven's discharge. Paragraph 4 of that complaint stated:

Plaintiff has reason to believe that after the date of its judgment but within one year before the filing of the bankruptcy petition defendant with the intent to hinder, delay or defraud a creditor of the estate transferred property of the debtor to another.

This was Lee Supply's sole allegation in the complaint of conduct barring discharge. Agnew answered the complaint on July 26, 1984, but it was not until June 6, 1985 that a hearing was held on the objection to discharge. On that same day Agnew filed a motion to dismiss the complaint for its failure to state a claim or to comply with Bankruptcy Rule 7009.

On September 13, 1985, the bankruptcy judge found in favor of Steven Agnew. The Agnews testified at the hearing (and

the bankruptcy judge so found) that Shirley had received the net sale proceeds from the sale of their house because she had contributed most of the money paid for the house and because the payoff of the second mortgage placed on it essentially satisfied a business debt Steven owed. The bankruptcy judge further found that Steven and Shirley had decided that the proceeds of the sale should pay out in Shirley's name alone because at that time they were separated and were contemplating divorce. They agreed that this arrangement would settle their respective property rights. (They never were divorced, and continue to reside together in the house Shirley purchased with the proceeds from the sale of their first house.) The bankruptcy judge held that Lee Supply had failed to show that Steven had made a fraudulent transfer, or had concealed information, or had knowingly and fraudulently made a false oath or account. Lee Supply appealed to the district court. On April 1, 1986, the order of the bankruptcy judge was affirmed.

On appeal, Lee Supply argues that Steven's discharge was improper under 11 U.S.C. sec. 727(a)(2) because, within one year before the discharge, Steven Agnew had transferred or released to his wife, Shirley Agnew, an interest in a property they had held together in a tenancy by the entirety. It further claims that the discharge was improper under 11 U.S.C. sections 727(a)(3) and 727(a)(4)(A) because Steven concealed in the bankruptcy proceedings information concerning this transfer and also made a false oath or account.

In considering this appeal, we must accept the findings of fact made below unless they are clearly erroneous. This rule, of course, does not apply to conclusions of law made either by the bankruptcy judge or the district court. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986); *In re Pearson Bros. Co.*, 787 F.2d 1157, 1161–62 (7th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985).

Lee Supply does not challenge the facts found below, but instead challenges the failures of the bankruptcy judge and the

district court to draw certain inferences from them. Concerning the transfer of Steven's interest in their home to Shirley, Lee Supply argues that the presence of multiple badges of fraud compels a finding of fraudulent intent, and that the bankruptcy judge and the district court failed properly to apply the Indiana law of tenancy by the entireties to the facts about the sale of the Agnew's first house.

The statute upon which Lee Supply mounts its first challenge to Agnew's discharge, 11 U.S.C. sec. 727(a)(2)(A), provides in part:

The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

■ To succeed in its objection section 727(a)(2), a creditor must prove:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(3) that the act was that of the debtor or his duly authorized agent;

(4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

4 *Collier on Bankruptcy*, para. 727.-02[1][b] (15th ed. 1986) (citing *In re Kessler*, 51 B.R. 895, 898 (Bankr.D.Kan.1985)). The intent to defraud must have been actual rather than constructive. *Id.,* para. 727.-02[3].

We find no reason to disturb the determination that Steven did not transfer assets with an intent to defraud his creditors, because we conclude as a matter of law that the circumstances of this case could not warrant a finding that Steven had defrauded his creditors. Those circumstances involve the application of Indiana's law of tenancy by the entirety to the undisputed facts concerning Steven's relinquishment of his interest in the net proceeds of the sale to Shirley.

*Tenancy by the Entirety*

■ At common law prior to the adoption of the Married Women's Property Acts in the nineteenth century, a tenancy by the entirety was the only concurrent estate that could be created between husband and wife, because they were deemed to constitute a single person or entity. R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* sec. 5.5, at 210–11 (West 1984) [hereinafter *The Law of Property* ]. This estate was abolished in England in 1925, and in the United States it is now allowed in only twenty jurisdictions, Indiana among them. *Id.*, at 211; Craig, *An Analysis of Estates by the Entirety in Bankruptcy*, 48 Am.Bankr.L.J. 255, 257 (1974). The incidents of this estate vary among jurisdictions:

In a few states it has been held that each spouse has an undivided one-half interest which he or she can convey or encumber at will, and which may be subjected to sale to satisfy his or her individual debts, although any conveyance, encumbrance, or involuntary sale of the interest of one spouse cannot deprive the other spouse of his or her right to possession or right of survivorship. In a larger number of states, however, it has been held that neither spouse has any interest that can be separately conveyed or encumbered, or seized by the creditors of one spouse alone to satisfy their claims against that spouse; thus one spouse alone cannot convey, encumber, or subject to the satisfaction of creditors' claims either that spouse's possessory estate for the joint lives of the co-tenants or that spouse's contingent right of survivorship.

*The Law of Property, supra* sec. 5.5, at 213–14.

Indiana is among the states following the majority pattern. Tenancies by the entirety are provided for in Indiana by statute. Ind.Code. sec. 32–4–2–1 (1982). Each cotenant is seised of the whole, which is taken by one upon the death of the other. *Id.; Anuszkiewicz v. Anuszkiewicz,* 172 Ind.App. 279, 360 N.E.2d 230, 232 (1977). Generally, neither has an interest severable without the consent of the other, *Thornburg v. Wiggins,* 135 Ind. 178, 34 N.E. 999, 1000 (1893), and property held by a tenancy in the entirety is exempt from execution upon it by the creditors of one spouse alone. *Baker v. Cailor,* 206 Ind. 440, 186 N.E. 769, 770 (1933). This is true also of the proceeds from the sale of a property so held, as long as they are left intact and are not divided and distributed between the spouses, although normally there can be no tenancy by the entirety in personalty. See *Whitlock v. Public Service Co. of Indiana, Inc.,* 239 Ind. 680, 159 N.E.2d 280, 285 (1959); *Anuszkiewicz,* 360 N.E.2d at 233. The estate (in the realty or the proceeds from the sale of realty formerly held in the entirety) is terminated by the death of one or both spouses, by divorce, by conveyance to a third party by both spouses, or by the conveyance or release by one person of his or her interest to the other. See *National City Bank of Evansville v. Bledsoe,* 237 Ind. 130, 144 N.E.2d 710, 713–14 (1957); *Fuston v. National Mutual Insurance Co.,* 440 N.E.2d 751, 753 (Ind.App. 1 Dist. 1982); *Anuszkiewicz,* 360 N.E.2d at 230; Ind.Code sec. 29–2–14–3 (1982); Ind.Code sec. 32–4–2–1 (1982); Ind.Code sec. 32–4–2–2 (1982).

Lee Supply argues that when Steven relinquished to Shirley his interest in the proceeds from the sale of their house, the proceeds necessarily became momentarily divided before they were distributed to Shirley and that when they became divided, Steven's share in the proceeds lost its exempt status and became subject to his individual debts. Lee Supply maintains that it is entitled to trace the proceeds to Shirley and through her to the house she built with those proceeds.

We have found no Indiana case that squarely answers the question of whether Steven's share of the proceeds lost its status of being exempt from his creditors when such proceeds were paid over to Shirley. The early case of *Enyeart v. Kepler,* 118 Ind. 34, 20 N.E. 539 (1889), however, sheds some light on it. In that case, a deed had been executed and delivered in 1876 to William B. and Martha Enyeart, conveying to them as an entirety a parcel of real estate. Four years later, William quitclaimed his interest in the real estate to Martha. The next year, Martha died, and in her will the land was left to the Keplers. William sued the Keplers, averring that his quitclaim deed to Martha was void and that he took the land as Martha's surviving husband and widower. The defendants demurred, and the court sustained the demurrer. William refused to amend his complaint, and judgment was entered upon the demurrer for the defendants. *Id.,* 20 N.E. at 539.

William argued on appeal that the quitclaim deed was void because he had no interest in the property that could be so conveyed, and that an estate, "vested in the husband and wife by entireties, cannot be conveyed by the husband without the wife joining in the deed." *Id.,* 20 N.E. at 539–40. The Indiana Supreme Court affirmed the judgment, stating:

> The rule in regard to estates by entirety is that neither can sever the union of interest without the consent of the other, but this is construed to mean that the one cannot sever the interest, or make any disposition of the estate, so as to affect the right of survivorship ... [t]he limit of this right of the husband is that he cannot do any act to the prejudice of the ulterior rights of the wife ... [i]n the case of a conveyance by the husband to the wife of his interest, and her acceptance of the deed, *it operates as a relinquishment of the husband's right as survivor.*

*Id.,* 20 N.E. at 540–41 (citations omitted) (emphasis added). The court went on to observe that if the wife accepted the deed and afterwards disposed of the real estate by will, this constitutes the necessary assent by her to terminate the estate, "if,

indeed, it can be said [that assent] in case of a conveyance of the husband's interest to the wife is necessary, more than the acceptance of the deed, as such a conveyance does not attempt to take from, *but rather adds to,* her interest in the land." *Id.,* 20 N.E. at 541 (emphasis added).

A conveyance of one spouse's interest in a tenancy by the entirety to the other spouse is "technically a 'release.'" *The Law of Property, supra,* sec. 5.5, at 214 (citing *Thornburg v. Wiggins,* 135 Ind. 178, 34 N.E. 999 (1893)). Consistent with this and the illustration in *Enyeart* of Indiana law, and in the absence of any authority to the contrary, we think that Indiana courts would not be inclined to conclude that Steven did any more than relinquish his survivorship rights to the proceeds, or that the proceeds were momentarily divided prior to Steven's releasing of his interest in them to Shirley. As in *Enyeart,* Steven's releasing of his rights to the proceeds, while terminating the estate, did not attempt to take from, but rather added to, Shirley's interest in the proceeds. So characterized, no divided interest ever vested in Steven and thus no right ever vested in Lee Supply to pursue it.

Lee Supply argues that *Anuszkiewicz* compels a different result. In that case, the proceeds from the sale of entireties property was divided equally between Kazimierz and Weronika Anuszkiewicz, husband and wife. Weronika retained her share, and Kazimierz with his share procured a certificate of deposit in his name and the name of his son, Roman, as joint tenants. Kazimierz died, and Weronika sued Roman and his wife, Zofia, to recover the proceeds.

The court in denying recovery to Weronika held that Kazimierz by procuring the certificate of deposit "changed the character of the proceeds from entirety property to personalty held in joint tenancy." 360 N.E.2d at 233. Unlike the present case, it

is clear that between Kazimierz and Weronika there was an actual division of the proceeds, taking part of them beyond Weronika's control, which "met with no objection" from her. *Id. Anuszkiewicz* is easily distinguishable, and provides no support under the unique facts of the present case for the conclusion that there was such a division here, making the proceeds non-exempt from Steven Agnew's creditors.

■ In order to justify the refusal of discharge under a section 727(a)(2) transfer, "it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditor and which was made with fraudulent intent." 4 *Collier on Bankruptcy, supra,* para. 727.02[5], at 727–21 to –22.[1] This is consistent with a case relied upon by the district court below, which holds that a transfer may be found to be a fraudulent conveyance only if it reduces the assets that are actually available to a creditor. *In re MacDonald,* 50 B.R. 255, 258 (Bankr.D.Mass.1985) (Husband's transfer of interest in entireties property to wife held not fraudulent as to husband's creditors). See also *Donvito v. Criswell,* 1 Ohio App.3d 53, 439 N.E.2d 467, 473 (1982) (Husband's quitclaim deed to wife conveying his interest in an estate by the entireties worked to terminate the estate by the entireties, vesting the grantee-spouse with an unqualified fee simple estate, to be held by her free and clear of any claims by creditors of her husband). It is also consistent with *Stamper v. Stamper,* 227 Ind. 15, 83 N.E.2d 184 (1949). The court in that case reviewed Indiana law and concluded that property that is exempt from execution may be transferred by the owner free from a creditor's claims, and in making the transfer the owner cannot be charged with defrauding his creditors or with intending to do so. "'[I]t is impossible to conceive any logical ground upon which [the conveyance of] property not

1. There are a number of cases involving similar fact patterns holding such a conveyance to have been a transfer with fraudulent intent. *E.g., In re Parameswaran,* 50 B.R. 780 (Bankr.S.D.N.Y. 1985). These cases, however, appear to involve the law of states in which one co-tenant's interest in entirety property is not immune from levy by a creditor of one spouse alone. There, a conveyance would reduce assets that are actually available to a creditor, and in such circumstances, the "badges of fraud" alleged here by Lee Supply would possibly be relevant.

subject to the claims of creditors can be held to have been fraudulent[ ]....'" *Id.,* 83 N.E.2d at 186 (quoting *Blair v. Smith,* 114 Ind. 114, 15 N.E. 817, 823 (1888)).

Furthermore, Lee Supply would have this Court reach the odd conclusion that Steven attempted to defraud his creditor by converting an exempt asset to a non-exempt asset. The court below declined to embrace this position, and we decline to embrace it here. We hold that Steven's release of his interest in the proceeds of the sale of the house to Shirley, during the twelve month period prior to his petition for discharge in bankruptcy, was not a transfer with actual intent to defraud Lee Supply because Lee Supply could never have had a claim to the asset in the first place. It was exempt from execution before Steven relinquished it, and it remained exempt from being executed upon by Steven's creditors after he relinquished it. The bankruptcy judge properly disallowed Lee Supply's challenge under section 727(a)(2)(A) of the Bankruptcy Code to Steven's discharge.

■ Lee Supply's remaining arguments were properly disposed of below. Section 727(a)(3) provides for the denial of discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

Lee Supply alleged that Agnew should be denied a discharge because he did not disclose in the statement of affairs attached to his petition that he had "transferred his interest in the ... house to his wife." The bankruptcy judge concluded that "such an omission [did] not constitute a falsification of records 'from which the debtor's financial condition ... might [have been] ascertained,' within the meaning of Code Sec. 727(a)(3)," and the district court affirmed. This application of section 727(a)(3) was correct. Lee Supply produced no evidence

that Steven failed to keep or preserve any recorded information that he had a duty to keep or preserve, see 4 *Collier on Bankruptcy, supra,* para. 727.03[3], or that he destroyed, mutilated, falsified, or concealed any recorded information. Even if Steven had done so, Lee Supply presented no evidence below and cites no evidence here from which it could be concluded that any such failure to keep such books or records made it impossible to ascertain Steven's financial condition. *Id.*

Section 727(a)(4)(A) provides for the denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account...." The bankruptcy judge found no evidence of fraud and concluded that Steven had not knowingly and fraudulently made a false oath or account when he did not report, in his statement of affairs filed with the bankruptcy judge, his release of the proceeds to Shirley. The district court affirmed.

■ We conclude that this finding as to fraud under section 727(a)(4) was not clearly erroneous. *In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d at 89. We note as an additional reason for this conclusion that a false oath under section 727(a)(4)(A) must relate to a material matter before it may bar a discharge. *E.g., In re Fischer,* 4 B.R. 517, 518 (Bankr.S.D.Fla.1980) ("Material" is in reference to the conditions of the estate or to the debtor's entitlement to discharge). See also 4 *Collier on Bankruptcy, supra,* para. 727.04[1]. Lee Supply argues that this omission in Steven's report concerned a matter that was obviously material to the administration of the case. Its sole argument that the omission related to a material matter is built on the premise that some part of the proceeds could have been reached by his creditors to satisfy his separate debts. The premise failing, its argument that the omission was material fails also.

AFFIRMED.