BURKS, administrator, *et al. vs.* BEALL, executor.

1. Where the testator devised and bequeathed his whole estate to his two sons, to be equally divided between them, appointing them executors, and they both qualified, and without administering the property or dividing it, used the realty and personalty, in carrying on a farming business as copartners or tenants in common, awaiting the termination of some litigation against them as executors, and one of them died leaving the property undivided and some claims against the estate outstanding, their legal relation to the property in using it was that of renters and hirers of it as individuals from themselves as executors; they were liable to the estate for reasonable rent and hire, and were entitled as co-partners or tenants in common (not as executors) to the proceeds of the business.

2. The surviving executor is entitled, as such, to administer the whole estate of the testator, and will be accountable to the administrator of the deceased brother for his share, either in kind, if a division in kind be had, or in money, if a sale for division should take place. Before any specific property can come from the father's estate to the administrator of the son to be administered, it must be administered by the surviving executor of the father.

3. If the widow and children of the son be entitled to a year's support, or the widow to dower, there is no cause, legal or equitable, for delaying the enjoyment of these rights; and if they cannot be asserted against the surviving executor, he can defend himself at law upon his title as executor, and has no need for an injunction.

February 26, 1887.

Administrators and Executors. Partnership. Injunction. Year's Support. Dower. Before Judge BOWER. Dougherty County. At Chambers, October 30, 1886.

On October 5, 1886, Joseph B. Beall, as executor of Jeremiah Beall, deceased, filed his bill in Dougherty superior court against Wiley P. Burks, as administrator of James A. Beall, deceased, Mrs. Ada S. Beall, widow of James A., and Jeremiah and Charles W., his minor children, making, by the bill and exhibits, in brief, the following case: On November 1, 1883, Jeremiah Beall died, leaving a will, the body of which was as follows:

"I, Jeremiah Beall, of the county of Baldwin and State of Georgia, being of sound mind and memory, in the enjoyment of good health, do make and ordain this to be my last will and testament, viz.: I give and bequeath unto my two sons, James A. Beall and Joseph B. Beall, all of my estate, both real and personal, to be divided equally between them.

"Unto my two sons aforesaid I commit my grandson, Jesse S. Beall, to be by them brought up and educated to business habits, so that he may grow up to be a useful man and a good citizen.

"I appoint W. A. Beall, James A. Beall and Joseph B. Beall executors to this, my last will and testament, with full power and authority to settle my estate without being required to make any returns or responsible to any court of law, etc. In witness whereof I have hereunto set my hand and seal on this the tenth (10th) day of January, eighteen hundred and seventy-six (1876)."

Under this will, James A. Beall and complainant qualified as executors and took charge of the property, which included lands in Dougherty, Baker and Baldwin counties, certain town property, personalty on the land, and household furniture, all aggregating $50,000. Upon their qualification, the executors found the estate embarrassed by a lawsuit, in which a recovery of about $30,000 had been had shortly before the death of the testator, and by other liabilities. When the testator bought the plantations in Dougherty and Baker counties, they were encumbered with a mortgage which had been given by B. H. Hill, the former owner, to the Northwestern Life Insurance Com-

pany for $25,000. This had been reduced by Mr. Hill by the payment of $5,000 and by the testator after his purchase (subject to the mortgage) by the payment of $5,000 more, leaving at his death $15,000, besides interest due thereon. Complainant and James A. then reduced it to $7,000 and substituted one Crosby as creditor, making him two mortgages, as executors and sole heirs of their father. The litigation mentioned above has been settled, leaving $172.00 liability against the estate, besides attorneys' fees of $3,000. Since the death of the testator, the complainant has paid $2,000 of these attorneys' fees, leaving the balance due. At the time of the death of the testator, there were also outstanding sundry debts to the amount of $750.30, which the complainant has paid off and settled out of his individual resources.

Finding the estate not in a condition for division, the complainant and his co-executor, James A. Beall, proceeded to carry on the business as it had been done previously by the testator, continuing the business of planting in 1884 and 1885. James A. Beall died in January, 1886. In conducting the business, debts to the amount of $6,093.23 were incurred, which are claimed as a charge against the estate of the testator. Besides this planting business, they carried on a commercial business in New York.

After the death of James A. Beall, his widow, Mrs. Ada S., and complainant desired that the affairs of the testator should be settled as early as practicable, and that a division should be had. James A. was and is indebted to the complainant about $30,000, which he had drawn from different sources, in excess of what the complainant had received. Of this about $8,200 came from the planting interest and the balance from the commercial interest. The complainant, however, desiring to be liberal with Mrs. Beall, entered into the following contract with her:

"This agreement, made and entered into this 28th day of January, 1886, by and between Ada S. Beall, widow of James A. Beall, of the city of New York, party of the first part, and Joseph B. Beall, of the

same place, party of the second part:  Witnesseth, that the party of the first part has this day paid to the party of the second part the sum of two thousand five hundred dollars in cash, receipt whereof by the party of the second part is hereby acknowledged; that upon the final division of the estate, left by the late Jerre Beall, of Georgia, by will, to the said late James A. Beall, and the party of the second part, the party of the second part shall be allowed or paid, and shall receive out of said estate of said Jerre Beall, deceased, the sum of eight thousand and two hundred dollars in excess of the share of said estate to which he is now entitled by virtue of said last will, or otherwise, that though said payment of two thousand five hundred dollars is made, and the above undertaking, as to the said division of said estate entered into by the party of the first part, it is understood that said payment and undertaking are for the joint and proportionate benefit of the party of the first part, and the infant children, heirs at law, and estate of the said James A. Beall, deceased, and that upon the final settlement of the estate of the said James A. Beall, deceased, the party of the first part shall be entitled to contribution from said children, heirs at law, and estate of said James A. Beall, deceased, but the party of the second part does not undertake that such contribution shall be actually had or received by the party of the first part.

"And the party of the second part, individually, and as surviving partner of the late firm of J. & W. A. Beall & Co., of the city of New York, and surviving executor of the last will and testament of the said Jerre Beall, deceased, doth release and forever discharge the party of the first part of and from all claims and demands of every name and nature due or to grow due to him individually, or as such surviving partner, or to the estate of said Jerre Beall, deceased, for or on account of any act or thing heretofore in any manner done or performed, except as hereafter specified, and the party of the second part, for himself and as such surviving partner and executor, doth hereby release and forever discharge the estate of the said James A. Beall, deceased, of and from all claims and demands of every name and nature due, or to grow due for or on account of any act or thing heretofore done or performed, except as hereinafter specified, and for himself, and as such surviving partner, he doth hereby assume payment of all outstanding debts of said late firm of J. & W. A. Beall & Co., and doth agree and covenant to save harmless the party of the first part, and the children, heirs at law, and estate of the said James A. Beall, therefrom.  But it is understood that in the event that at the final settlement of the estate of said James A. Beall, deceased, the party of the first part shall, for any legal or other reason, fail to obtain such contribution as aforesaid, then this release shall be operative, to prevent the party of the second part from enforcing, either individually or as such surviving partner or executor, any claim which may

belong now to him in either such capacity, any such enforcement, however, to be for the benefit of the party of the first part, and for the purpose of protecting her for any moneys or property which she shall have paid out, surrendered or transferred for the benefit of said children, or either, or said estate of James A. Beall, deceased. And the party of the second part individually, and as such surviving partner and as such executor (in so far as in the latter capacity he may lawfully do the same), hereby agrees and undertakes, that in the event of such failure upon the part of the party of the first part to obtain such contribution at the time and in the manner aforesaid, he will at once proceed to enforce at once any and all claims due or owing by the said James A. Beall, deceased, at the time of his death to the party of the second part individually, or as such surviving partner, or to the estate of said Jerre Beall, deceased; and that after deducting all legal costs and charges, he will transfer the proceeds of such enforcement to the party of the first part to such amount as shall be necessary to save her harmless from paying or suffering more than her equitable proportion of the said two thousand and five hundred dollars, and of said eight thousand two hundred dollars aforesaid. And the party of the second part agrees that he will not enforce any such claim beyond the extent necessary to the accomplishment of the purposes herein specified; and except as herein provided and to the extent therein specified, the and each of the releases herein contained shall stand and remain in full force and effect. It is understood and agreed that the sum of eight thousand two hundred dollars, above named, represents the amount which James A. Beall, during his lifetime, received from the lands and plantations in Georgia, of which he and the party of the second part were seized in common in excess of his share of the income and profits thereof, and nothing in the above agreement and release is to be taken or construed to operate so as to release the half part of said real estate, of which said James A. Beall died seized, from the claim of the said party of the second part for that amount until payment of said sum, or the receipt and acceptance by the party of the second part of such excess upon partition or division of said land.

"It is understood that the party of the second part does not assume payment of a certain note of one thousand dollars, held by C. W. Crosby, and secured by a lien on a seat in the Cotton Exchange, but that such note shall be paid by the estate of James A. Beall, deceased. And the party of the first part agrees to save harmless the party of the second part from all liabilities on said note. But no claim will be made by the party of the second part for repayment of any part of the proceeds of any sale of said seat, in case the same shall be sold to pay said note, or any part thereof; it being understood that any proceeds of said seat, after payment of said note, shall belong to the party of the first part as representative of said James A. Beall's estate.

"In witness whereof the parties hereto have hereunto set their hands and affixed their seals the day and year first herein written."

It has been impracticable up to this time to wind up the estate of Jeremiah Beall. Under the agreement, the complainant took charge of the estate and made arrangements in regard to its indebtedness, paying out of his own funds $6,000 thereof. Before the death of James A., one Westbrook had been employed as the agent of the parties in conducting the farming operations, and the complainant, as sole executor, renewed the employment. The defendants are interfering with the administration of the estate, claiming that the complainant individually assumed the payment of its debts. He denies this, and says that the assumption of the debts of the firm of J. &. W. A. Beall & Company related to the commercial business in New York, and did not include either the debts of the estate of Jeremiah Beall, or those contracted by the complainant and James A. in the planting interest in Georgia. The administrator of James A. Beall has proceeded to advertise for sale an undivided half interest in the lands left by Jeremiah Beall, claiming that such half interest belongs to the estate of James A. He has sold this interest in certain land, and declares his intention to sell an undivided half interest in the balance. The complainant insists that he is entitled to have the amount due him paid before any claim to the share of James A. can be enforced. Even if the complainant and James A. Beall were tenants in common, and the contract with Mrs. Beall were not binding, complainant claims an indebtedness of $3,000 on account of amounts drawn from the planting operations by James A., which should be a charge on the property in any proceeding for partition.

Mrs. Ada S. Beall has had $4,000 worth of household furniture in the family homestead set apart to her as a year's support for herself and children, and the complainant has appealed therefrom. The complainant charges that she and her children have already received a suffi-

cient amount as a year's support. She further declares her intention to apply for dower in the one-half undivided interest in the lands of Jeremiah Beall. She is proceeding on the basis of the one-half undivided interest, without regard to indebtedness, which would be unfair, and the land, if forced to sale, would cause a sacrifice of the estate.

It was prayed that the applications for year's support and dower, as well as any interference with the estate, its management and settlement, and the sale of any of it by the administrator of James A. Beall, be enjoined. There were other prayers for the allowance of sales, payment to complainant, partition, subpœna and general relief.

Attached to the bill were copies of the various instruments referred to.

Burks, administrator, answered, in brief, as follows: At the death of Jeremiah Beall, there were no debts except that due by the mortgage to the Northwestern Life Insurance Company and certain attorneys' fees. This mortgage debt was fully settled and paid off by the complainant and James A. Beall, they giving mortgages, which bound them individually, to raise money for the purpose. It is denied that the other debts claimed in the bill were against the estate, and it is alleged that James A. and complainant became tenants in common and assumed the indebtedness. The contract between the complainant and Mrs. Beall is insisted on as valid and binding, and defendant states that complainant is not in a position to assert its invalidity on account of the minor children. The application to sell the undivided half interest, and the application for year's support and for dower, are admitted. The estate of James A. Beall is amply able to pay the $8,200 stipulated in the contract with Mrs. Beall and the $4,000 year's support. The defendant insists that any indebtedness contracted in running the farm was that of James A. and the complainant individually, and not of the estate, and that the amount stated ($8,200) is all that complainant can legally claim.

On the hearing, the bill and answer, with the exhibits attached to each, and certain affidavits in regard to the employment of Westbrook, were introduced. It was admitted that the lands had been operated for farming purposes since the death of Jeremiah Beall; that the debts had been contracted in the name of J. & W. A. Beall & Company, and that since the 26th of February, 1886, Joseph B. Beall had paid up or assumed individually the debts so incurred, amounting to $6,090.00.

The chancellor enjoined Burks, administrator, from selling any of the property and Mrs. Beall from setting up any claim for year's support and dower. The defendants excepted.

R. Hobbs; Smith & Jones, for plaintiffs in error.

C. B. Wooten, for defendant.

Bleckley, Chief Justice.

Beall, the father, made a will and died. He gave all his property to his two sons, to be divided equally between them, and appointed them executors. They qualified and took possession of the property, and used it, under a copartnership name, for planting. There was a certain action against their ancestor, to which they were made parties; and awaiting the result of this action, they forebore to make any division of the property, but cultivated it and used it as tenants in common, or copartners, until one of them died, the property still being undivided, and some debts being still unpaid.

Administration was granted upon the estate of the deceased son, and his administrator came forward and attempted to sell the interest of the deceased in some of the lands. His widow made application for a year's support for herself and children, and threatened to apply for dower in the lands. The surviving executor applied for an injunction against any interference by the administrator,

of the deceased with this property, and against any assign-
ment of year's support or dower, and the judge below
granted an injunction to hold off the administrator of the
deceased son from this property, and to hold off the widow
and children of the deceased from any assignment of year's
support, or assignment of dower.  The circumstances show
that the widow was aiming at this property for the year's
support as well as for dower.  The case was brought here
by the administrator and the widow, with the children
also as parties.

Where the only devisees and legatees under a will are
also executors, they can administer as informally as they
please, so that they do not interfere with the rights of cred-
itors, but where they do not in fact administer the estate,
but keep themselves through a series of years related to it
as executors and at the same time relate themselves to it
as individuals, what is their legal relation as a whole to the
specific property of which the estate consists?  They can-
not have the legal title in their character of executors and
also in their character as individuals.  There is, however,
no difficulty in their holding the property as executors to
await the result of pending litigation in which the estate
is interested, or until the debts are all paid, and in using
it to carry on an individual business of their own as co-
partners or tenants in common.  If they do this, they are
virtually renters of the realty and hirers of the personalty
in their character as individuals, from themselves in their
character of executors.  Did the estate, as to the *corpus*,
prove insolvent, they would be answerable to creditors for
reasonable rent and hire, no matter what profits or losses
attended their copartnership business, and after getting
clear of creditors of the testator, they would be entitled
as individuals, not as executors, to all the profits of that
business.  It is fairly inferable from the record both that
the estate of Jeremiah Beall has never been administered,
and that the two sons conducted a partnership business in
using it.  They could not have been partners as executors,

and so the partnership holding must have been subordinate to their holding as executors. When one of them died, leaving the property in this situation, and some unpaid claims against the estate, the other, as surviving executor, had the right to administer the entire estate of Jeremiah Beall, which had not previously been administered. The brother's administrator can administer nothing which constituted a part of the father's estate so long as it remains unadministered by the executor. In Jeremiah Beall's will there are no specific devises or legacies. The whole estate is disposed of together, and the executors either parted with title and dominion as such, or they did not. If they did, the survivor has no right to an injunction to prevent the administrator of the brother's estate from selling, and if they did not, he has no need for such injunction. And the same may be said of year's support and of dower. Neither of these can be taken in the estate of Jeremiah Beall, but only in the estate of James Beall. If James Beall left an estate, whether derived from his father or not, subject to a year's support for his family, or to this support and dower, there is no cause, legal or equitable, for obstructing the enjoyment of these rights, or either of them. In their very nature, they are rights for speedy possession and enjoyment. And if there be no such estate, the assignment of a year's support to the family, or of dower to Mrs. Beall, should not be hindered or delayed at the instance of Jeremiah Beall's executor, a mere stranger. The rights which that executor has in the property of his testator are legal rights, and can be asserted at law.

With regard to the contract between the widow and the executor, it surely is no basis for an injunction, either against the administrator, who was no party to it, or against the widow as to year's support and dower.

1. Where the testator devised and bequeathed his whole estate to his two sons, to be equally divided between them, appointing them executors, and they both qualified, and without administering the property or dividing it, used the

realty and personalty in carrying on a farming business as copartners or tenants in common, awaiting the termination of some litigation against them as executors, and one of them died leaving the property undivided and some claims against the estate outstanding, their legal relation to the property in using it was that of renters and hirers of it as individuals, from themselves as executors; they were liable to the estate for reasonable rent and hire, and were entitled as copartners or tenants in common (not as executors) to the proceeds of the business.

2. The surviving executor is entitled, as such, to administer the whole estate of the testator, and will be accountable to the administrator of the deceased brother for his share, either in kind, if a division in kind be had, or in money, if a sale for division should take place. Before any specific property can come from the father's estate to the administrator of the son to be administered, it must be administered by the surviving executor of the father.

3. If the widow and children of the son be entitled to a year's support, or the widow to dower, there is no cause, legal or equitable, for delaying the enjoyment of these rights, and if they cannot be asserted against the surviving executor, he can defend himself at law upon his title as executor, and has no need for an injunction.

Judgment reversed.