GREGORY *v.* GRAY & SON, and *vice versa.*

1. A conveyance by a debtor to his son-in-law, made pending suit against the former by the creditor who now attacks such conveyance as fraudulent, is to be scanned closely, especially where the badges of fraud, including an express stipulation that the debtor was to retain possession for a definite period after the execution of the conveyance, are numerous.
2. The evidence in this case warranted the verdict finding the property subject.                        *Judgment affirmed.*

December 7, 1891.              *Cross-bill of exceptions dismissed.*

Debtor and creditor. Fraudulent conveyance. Before Judge RONEY. Burke superior court. May term, 1891.

On the 10th of March, 1890, Gray & Son obtained a judgment in Burke county court against Thorn for $143 principal, and attorneys' fees, interest and cost. Execution issuing from this judgment was entered on the general execution docket of the county on March 18, 1890, and on May 20, 1890, the execution was levied on certain land as the property of Thorn. Gregory interposed a claim. Upon the trial of the claim case, May 7, 1891, the property levied upon was found subject. The claimant's motion for a new trial was overruled, and he excepted. The grounds of the motion were, that the verdict was contrary to law, evidence, etc.; and that the court erred in charging that " Contracts between relations and members of the same family are to be scanned closely."

It appearing upon the trial that the defendant was in possession of the land at the date of the levy, the claimant assumed the burden of proof, and introduced a deed from defendant to him, dated February 18, 1890, to the land in controversy, recorded in the office of the clerk of the superior court on June 3, 1890; also testimony to the following effect: Thorn, the defendant, sold the land levied on to claimant at the time of the execution of the deed. It was stipulated at the sale that defendant was

to continue to live on the place during that year. The sale was made for a fair price. Defendant retained possession because he had been unable to sell in the winter and had done some work on the place at the time of the sale, which he did not wish to lose. At the time of the trial he was not in possession of the land, but claimant was. There was no money paid when the deed was made, but claimant gave his notes for the land, which have been settled by a payment in the fall of 1890 of some $200 or $300, and the payment of the balance, about $700, in March, 1891. Defendant was willing to take claimant's notes, because he considered him good. Claimant is his son-in-law. Defendant wished to sell the land because he could not get some adjoining property and was hemmed in. There was no reservation of interest, but the sale was a square one. Defendant was served with a copy of the suit of Gray & Son before the sale to claimant, and told Gray if he would stop his suit, he (defendant) would pay the debt. He has never done so. At the time of the sale he owed Gray & Son the amount of their *fi. fa.*, one Daniels $300 or $400, one Warnock $100 or more, one Godbee $35, and his (defendant's) wife $150 with interest for fourteen years; also some small doctor's bills. Defendant also sold a wagon and some hogs, and had nothing that could be levied upon; has nothing now, except some money and some notes; has paid the debt due his wife since the sale, some of the doctor's bills and Godbee, and paid Warnock $40, but still owes him $100 or more.

Plaintiff introduced claimant who testified, in substance: Does not know how much Thorn owed nor how much property he owned; knew he had been sued by Gray; asked him if there were any debts or executions to come against him, and he said there had been a suit pending against him by Gray, but he had made arrangements with Warnock to have the suit stopped.

Witness gave three notes for the purchase money, the first of which he took up a few days after it fell due, by paying the money, and the other two he settled by giving his notes to a creditor of Thorn and taking a surrender of his notes to Thorn. It was a fair square transaction, he paid a fair price, and there was no reservation. Did not know Thorn was trying to avoid the payment of his debts and had no reason to think so. Visited Thorn's house often. Thorn approached him and offered to sell the land, and he knew Thorn had no other land and that he had sold his wagon and hogs; also that Mrs. Thorn had "heired" a piece of land which Thorn had disposed of; but did not know that Thorn owed Daniel or Godbee or a doctor's bill. Witness had a tract of land adjoining the tract in question.

The plaintiffs took a cross-bill of exceptions not here material. Among the citations of counsel were the following: Code, §§2640, 2751, 1952, par. 2; 55 *Ga.* 497; 67 *Ga.* 430, 528(3); 65 *Ga.* 82; 80. *Ga.* 408(3); 76 *Ga.* 243, 347; 69 *Ga.* 757; 75 *Ga.* 537; 57 *Ga.* 238; 73 *Ga.* 115; 82 *Ga.* 827; 51 *Ga.* 18, 528; 64 *Ga.* 442; 59 *Ga.* 443; 20 *Ga.* 600(5); 6 *Ga.* 103; 60 *Ga.* 85; 62 *Ga.* 627(3); Acts 1889, p. 106.

J. J. JONES & SON and E. L. BRINSON, for claimant.
LAWSON, CALLAWAY & SCALES and T. D. OLIVER, *contra.*