## BEASLEY, trustee, *v.* SMITH *et al.*

1. A bill of exceptions to a judgment sustaining general and special demurrers and vacating an entry of service, which affirmatively discloses that the judgment to vacate the entry of service was predicated entirely on the pleadings, will not be dismissed because the certificate fails to recite that the bill of exceptions contains or specifies all the evidence material to a clear understanding of the errors complained of.

2. Where a petition is brought against resident defendants, and also against one who is alleged to reside in a different county in this State, and the non-resident defendant is served by the sheriff of the county in which the suit is pending, such service is void, and the entry of service will be vacated where such defendant has not estopped himself by waiver or pleading to the merits.

3. A voluntary deed by an insolvent grantor is void as against existing creditors. Such a deed is likewise void as to creditors, though the grantor be not insolvent at the time of making the deed, if his purpose in so doing is to hinder, delay, or defraud creditors. If the fraudulent grantee sells the property to an innocent purchaser, any unpaid purchase-money due on such sale will be impounded as an equitable asset of the debtor for distribution to his creditors.

4. The trustee in bankruptcy is vested with the creditors' rights of action with respect to property of the bankrupt fraudulently transferred by him, and he may assail in their behalf all such transfers to the same extent as though the debtor had not been declared a bankrupt.

5. Under the facts alleged in the petition, the plaintiff was not in laches in prosecuting his remedy.

6. The special demurrers were met by appropriate amendment.

DECEMBER 15, 1915.

Equitable petition. Before Judge Hammond. Tattnall superior court. October 6, 1914.

Z. Smith owned a tract of land which he conveyed, on November 4, 1908, to his son W. B. Smith, upon an alleged consideration of $2,200. On December 18, 1908, W. B. Smith conveyed the same land to Mrs. M. J. Smith, the mother of W. B. Smith and wife of Z. Smith, upon an alleged consideration of $2,300. Thereafter Mrs. M. J. Smith contracted to sell the land to J. H. Durrence, and executed to him a bond conditioned to make title to the land upon the payment of the purchase-price. Durrence died after paying a small portion of the purchase-money, and administration was had upon his estate. His administrators filed a bill to marshal his assets, and Mrs. M. J. Smith intervened and asked payment of the balance of the purchase-money from the proceeds of the land. J. V. Kelley, the receiver in that case, was directed to sell the land at public outcry, and from the proceeds to pay Mrs. M. J. Smith

the balance due upon her contract for the sale of the land to Durrence. Pursuant to the order the receiver advertised the land for sale at public outcry on the first Tuesday in September, 1908. In the meantime Z. Smith had been adjudged a bankrupt, and H. C. Beasley was appointed as his trustee. On September 1, 1913, H. C. Beasley, as trustee in bankruptcy for Z. Smith, filed his petition in the superior court of Tattnall county, against Z. Smith, W. B. Smith, Mrs. M. J. Smith, and J. V. Kelley as receiver, alleging that all of the defendants were residents of Tattnall county, except W. B. Smith, who resided in Telfair county. In his petition he alleged, that the deeds from Z. Smith to W. B. Smith and from W. B. Smith to Mrs. M. J. Smith were without consideration; that the conveyance of the land by Z. Smith to his son, W. B. Smith, rendered him insolvent, and W. B. Smith had knowledge of the fact that such conveyance rendered his father insolvent, and Mrs. M. J. Smith likewise had knowledge, when she accepted the conveyance from her son, that at the time the conveyance was made to him the grantor, Z. Smith, was insolvent; that both W. B. Smith and Mrs. M. J. Smith had full knowledge that the conveyance from Z. Smith to W. B. Smith was made for the purpose of delaying and defrauding creditors of Z. Smith; that these conveyances were made as the result of a conspiracy to enable Z. Smith to hinder, delay, and defraud his creditors; that certain named persons were creditors of Z. Smith in stated amounts at the time of the conveyances, and that other named creditors had extended credit to Z. Smith on the faith of his ownership of the land, without notice of these conveyances; that at the time the debts were contracted Z. Smith was in possession of and living upon the land; and that the creditors had no knowledge or notice of the existence of the fraud and the fraudulent scheme complained of in the petition, until a month prior to the bringing of the petition. Petitioner prayed, that the order of the court directing the receiver, in the case of the administrators of Durrence to marshal assets, be so modified as to restrict the receiver from paying over any part of the proceeds derived from the sale of the land to Mrs. Smith, and that it be directed by order that the proceeds of the land, less the amount due to the administrators of Durrence, be paid over by the receiver to petitioner as trustee in bankruptcy for the benefit of the creditors of the bankrupt; and

for process. The petition was returnable to the October term, 1913, of Tattnall superior court. At the appearance term all the defendants filed an answer. On October 29, 1913, W. B. Smith made a special appearance, and moved to vacate the entry of service as to him, on the ground that the sheriff of Tattnall county was not authorized to make service upon him, as it affirmatively appeared from the petition that he was a resident of Telfair county, and that the sheriff of the latter county or his deputy only could make legal service upon him. Mrs. M. J. Smith filed special and general demurrers to the petition. The court passed an order vacating the entry of service by the sheriff of Tattnall county upon the defendant W. B. Smith, and dismissed the suit as to him. The demurrers of Mrs. M. J. Smith were sustained. The trustee in bankruptcy sued out a writ of error.

*Way & Burkhalter,* for plaintiff.

*W. B. Smith, H. H. Elders,* and *Hines & Jordan,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. When the case was called a motion was made to dismiss the writ of error, because there is no recital in the certificate that the bill of exceptions contains or specifies all of the evidence material to a clear understanding of the errors complained of. We do not think this motion is good, for the reason that the case was dismissed on demurrer and motion to vacate service, and no evidence was submitted. It would be idle to require a judge to certify that the bill of exceptions contains or specifies evidence, when the case was not heard upon the evidence, and none was submitted.

2. The record shows that the motion of W. B. Smith to vacate the entry of service as to him, and the plea of the defendants, were filed on the same day. Inasmuch as there is a recital in the motion to vacate the service that it is done before pleading to the merits, and in the absence of anything in the record to show that the filing of the plea to the merits actually preceded the filing of the motion to vacate, it will be taken that this defendant made a special appearance for the purpose of moving to vacate the entry of service before pleading to the merits. The statute provides for service of a defendant alleged to be a resident of a county different from that where suit is pending, by second original, directed to the sheriff and his lawful deputies of the county of his alleged resi-

dence. Civil Code (1910), § 5567. The clerk of Tattnall superior court had no right to issue process directing the sheriff of that county to serve the defendant, who was alleged to be a resident in a different county. The service by the sheriff of Tattnall county by virtue of this process is no service, and the court did not err in vacating the entry of service. However, the process could have been amended, and the defendant served pursuant to law. *Callaway* v. *Harrold,* 61 *Ga.* 111.

3. The gravamen of the complaint is that the bankrupt fraudulently conspired with his son and wife to defraud his creditors. A voluntary deed by an insolvent grantor is void as against existing creditors. Such a deed is likewise void as to creditors, though the grantor be not insolvent at the time of making the deed, if his purpose in so doing is to hinder, delay, or defraud creditors. *Ernest* v. *Merritt,* 107 *Ga.* 61 (32 S. E. 898). It is a principle well settled in equitable jurisprudence that a grantee who fraudulently accepts a conveyance of land for the purpose of enabling a grantor to defeat his creditors takes the land as the trustee of the creditors. A grantor can not, by the mere change of the character of the property, change the equities of the parties. The property in the hands of the fraudulent grantee is held by him in trust for the creditors of his fraudulent grantor; and if the property be converted into money, the money is impressed with the same trust, and the fraudulent grantee will be compelled in equity to account for the same. Blair v. Smith, 114 Ind. 114 (15 N. E. 817, 5 Am. St. R. 593); Mandeville v. Avery, 124 N. Y. 376 (26 N. E. 951, 21 Am. St. R. 678). It is not contended that the purchaser from the wife had notice, or grounds for reasonable suspicion, of the alleged fraud of the wife and the debtor; and therefore he was not affected by their fraud, and upon payment of the purchase-money his title would be good against the creditors of the fraudulent debtor. *Nicol* v. *Crittenden,* 55 *Ga.* 497. But the unpaid purchase-money would be a fund against which the creditors of the fraudulent debtor may proceed. Inasmuch as the specific land can not be subjected on account of the intervening right of an innocent third person, equity will impound and impress the unpaid purchase-money with a trust for the payment of their debts.

4. The trustee in bankruptcy is vested with the creditors'

rights of action with respect to property of the bankrupt fraudulently transferred by him, and in their behalf he may assail all such transfers to the same extent as though the debtor had not been declared a bankrupt. *McLanahan* v. *Blackwell*, 119 Ga. 64 (3), 65 (45 S. E. 785); 2 Moore on Fraudulent Conveyances, 1183.

5. The demurrer raised the point of laches and the statute of limitations. The suit was brought about five years after the transactions complained of. There is no express statute of limitations for the particular case. If the debtor's creditors had filed a suit of this character against the Smiths, prior to Mrs. Smith's conveyance to Durrence, to cancel the deeds and for the appointment of a receiver to hold possession of the property pending suit, and for the administration of the land through the medium of the receivership, the action would not have been barred. Where the effect of a decree is to restore the possession of the land to the complainant, the action for cancellation is governed by the statute of limitations applicable to actions for the recovery of real estate. 6 Cyc. 304. In this State there is no statute of limitations for the recovery of real estate. An equitable action brought to cancel a deed, where the decree would have the effect of restoring possession of the land to the complainant, has been analogized to the rule of law permitting title by adverse possession to be acquired in seven years; and a suit brought in that time, where there are no special reasons calling for the interposition of an equitable bar, is not barred. *Cade* v. *Burton*, 35 *Ga.* 280; *Knox* v. *Yow*, 91 *Ga.* 367 (5), 375 (17 S. E. 654). However, the present action is not to cancel the various deeds and to subject the land conveyed in fraud of creditors to the payment of their claims, but it is to subject, in the hands of the court's officer, a fund which represents the balance of the purchase-money due by the innocent vendee to the debtor's fraudulent transferee, which is an equitable asset of the fraudulent debtor and liable to the payment of his debts. Nothing appears on the face of the declaration showing that the plaintiffs were guilty of inexcusable delay in bringing their suit. Indeed it does not affirmatively appear when the land was sold by Mrs. Smith to Durrence; nor does it affirmatively appear when the trustee in bankruptcy was appointed. Moreover, it is alleged that the fraudulent character of the transactions

was not known until a month before the filing of the suit; and under these circumstances we do not think that an equitable bar would attach.

6. The various special demurrers were met by amendment, and it is not necessary to notice them.

The judgment vacating the service as to the defendant W. B. Smith, and that sustaining the general and special demurrers of the defendant M. J. Smith, were rendered at the hearing. No ground of demurrer complained of a nonjoinder or misjoinder of parties, nor was any motion made to dismiss the case for lack of parties after the vacation of the service as to W. B. Smith. But inasmuch as the petition stated an equitable action against the defendants, including the defendant W. B. Smith, it was erroneous to dismiss the petition on demurrer. That judgment is reversed, with direction that leave be granted the plaintiff in error, by appropriate order, to provide for the service of the petition upon W. B. Smith.

*Judgment reversed, with direction. All the Justices concur.*