## McLENDON v. REYNOLDS GROCERY COMPANY.

1. A conveyance of property, made with the intention of hindering, delaying, or defrauding creditors, is void as against creditors. If the transaction is bona fide and on a valuable consideration, and the party taking has no notice or ground for reasonable suspicion of the intention to hinder, delay or defraud creditors, the conveyance is valid. But if the party taking has notice of the intention of the maker to hinder, delay, or defraud his creditors, or has ground for reasonable suspicion of such intention, the conveyance is void as against the creditors of the maker.

2. A conveyance of property made to a creditor to secure a debt is as much open to attack for fraud as an absolute conveyance.

3. A deed is void as to creditors, though the grantor is not insolvent at the time of making it, if his purpose is to hinder, delay, or defraud his creditors, and such purpose is known to the grantee, or he has ground for reasonable suspicion that such is the purpose.

4. A sale of land by a debtor during the pendency of lawsuits against him is a circumstance which the jury may consider on the trial of the issue as to whether the sale was fraudulent against his creditors.

5. Transactions between near relatives are to be scanned with care and scrutinized closely, and slight evidence of fraud shown between them may be sufficient to set the transaction aside.

6. "It is the duty of juries to seek to arrive at the truth under the evidence. It is the duty of the presiding judge, on motion for a new trial properly raising the point, to consider whether the verdict is contrary to evidence, or decidedly and strongly against the weight of the evidence, or without evidence to support it. In determining whether or not a new trial should be granted on the ground that the verdict is contrary to the evidence, or decidedly and strongly against the weight of the evidence, he should exercise a sound discretion. But when he has done so and has approved the verdict, this court will not grant a new trial merely because the evidence is conflicting, or

even if there should appear to be a preponderance of evidence against the verdict, if there is sufficient evidence to support it."

7. There is evidence to support the verdict in this case, and the court did not err in refusing a new trial.

No. 4696. JULY 16, 1925. REHEARING DENIED AUGUST 14, 1925.

Claim. Before Judge Shurley. Wilkes superior court. December 9, 1924.

*C. D. Colley* and *C. E. Sutton,* for plaintiff in error.

*Norman & Norman* and *B. W. Fortson,* contra.

HILL, J. A fi. fa. issued in favor of Reynolds Grocery Company against Toombs McLendon was levied upon a certain tract of land, as the property of Toombs McLendon and in his possession, according to the entry of the levying officer. Andrew McLendon, the brother of Toombs McLendon, filed a claim to the land, setting up title under a security deed made by Toombs McLendon to him. The plaintiff in fi. fa. filed its equitable petition in aid of its levy, alleging that the security deed was fraudulent and void, having been made by Toombs McLendon for the purpose of hindering, delaying, and defrauding his creditors, and praying that the deed be set aside and canceled. On the trial the claimant assumed the burden of proof. A jury returned a verdict in favor of the plaintiff in fi. fa., and for a cancellation of the deed. The claimant made a motion for new trial only upon the usual general grounds, which was overruled, and he excepted. The only question involved, therefore, is whether the evidence is sufficient to support the verdict. No error of law is complained of as having been committed on the trial of the case. The general rule is that where there is any evidence to support a verdict, and no error of law is complained of, this court will not disturb the judgment of the court below approving the verdict, and overruling the motion for new trial. *Stevens* v. *Middlebrooks, 77 Ga.* 8. And this rule has been applied in a claim case where the issue was the bona fides of the transaction between the claimant and the defendant in fi. fa. *Burks* v. *Beall, 77 Ga.* 271 (3 S. E. 155). This court has also ruled in numerous cases that conflicts of evidence and the credibility of witnesses are questions solely for the jury to determine; and where verdicts in such cases have the approval of the trial judge, this court will not interfere. *Bussey* v. *Moses, 48 Ga.* 120; *Merchants' &c. Bank* v. *Trustees, 62 Ga.* 271; *Central R. Co.* v. *Ferguson, 63 Ga.* 83; *Jones* v.

*Cooper,* 80 *Ga.* 364 (10 S. E. 124); *Clark* v. *Ballew,* 140 *Ga.* 75 (78 S. E. 413). Even where a preponderance of the evidence is against a verdict and there is a conflict in it, but some evidence to support the finding of the jury, and the trial judge has approved it, this court will not grant a new trial. *Slaton* v. *Fowler,* 124 *Ga.* 955 (53 S. E. 567). In a case like the present, the jury is not required to accept as true the statements of the defendant in fi. fa. and the claimant, that no fraud was intended to be perpetrated in the transaction between them conveying the property in controversy to the claimant. See *Oliver* v. *Lewis,* 149 *Ga.* 763 (8) (102 S. E. 146); *Manley* v. *McKenzie,* 128 *Ga.* 347 (3), 351 (57 S. E. 705); *Hollis* v. *Rogers,* 106 *Ga.* 13 (31 S. E. 783); *Kelly* v. *Stovall,* 138 *Ga.* 186 (75 S. E. 6).

While fraud may not be presumed, yet being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Civil Code (1910), § 4626. A conveyance made with the intention of hindering, delaying, or defrauding creditors is void as against creditors. § 3224, par. 2. If the transaction is bona fide and on a valuable consideration, and the party taking has no notice or ground for reasonable suspicion of the intention to hinder, delay, or defraud creditors, the conveyance is valid. The converse of the proposition is true, that if the party taking has notice of the intention of the maker to hinder, delay, or defraud his creditors, or has ground for reasonable suspicion of such intention, the conveyance is void as against the creditors of the maker. A conveyance of property made to a creditor to secure a debt is as much open to attack for fraud as an absolute conveyance. A conveyance to secure a debt must be in all respects as clean and clear as a conveyance for permanent ownership. *Phinizy* v. *Clark,* 62 *Ga.* 623, 626, 627. A deed is void as to creditors, though the grantor is not insolvent at the time of making it, if his purpose is to hinder, delay, or defraud his creditors. *Beasley* v. *Smith,* 144 *Ga.* 377 (3), 380 (87 S. E. 293); *Earnest* v. *Merritt,* 107 *Ga.* 61 (32 S. E. 898); *Pfleiger* v. *Jones,* 147 *Ga.* 473 (2) (94 S. E. 580). It has also been held by this court that if the deed was made with intent to hinder, delay, or defraud the creditors of the grantor, or any one of them, and this fact was known to the grantee, or the grantee had reasonable ground to suspect that such was the intention of the grantor, the deed would

be void as to creditors, even though it was given on a valuable consideration. *Conley* v. *Buck,* 100 *Ga.* 187 (2), 205 (28 S. E. 97) ; *Peck* v. *Land,* 2 *Ga.* 1 (3) (46 S. E. 368). A sale of land by a debtor in the face of a pending lawsuit against him is a circumstance which the jury may consider on the trial of the issue as to whether the sale was fraudulent against his creditors. *Barber* v. *Terrell,* 54 *Ga.* 146 ; *Tillman* v. *Fontaine,* 98 *Ga.* 672 (27 S. E. 149) ; *Va.-Car. Chemical Co.* v. *Hollis,* 23 *Ga. App.* 634 (4) (99 S. E. 154).

How stands the evidence in this case? From the evidence adduced on the trial it appears that Toombs McLendon and Andrew McLendon were brothers. Toombs was a merchant, a farmer, an undertaker, and a preacher. These brothers were negroes. Toombs was engaged in the numerous above-mentioned vocations (or perhaps we should say avocations), and became badly involved in debt. His brother Andrew, who was an extensive farmer, and, although unable to read or write except mechanically to sign his name, was very successful and prosperous in his business, and at various times loaned his brother large sums of money and indorsed his notes for other sums, aggregating approximately $35,-000. After the suit in the case of Reynolds Grocery Co. v. Toombs McLendon was brought, Toombs transferred the property in controversy to his brother, Andrew, for a purported consideration of $35,000, in order to secure Andrew for money loaned and for his indorsement on certain notes and obligations held against Toombs. Mr. Ficklin, cashier of one of the banks in Washington, testified in behalf of the claimant, that, from a course of dealing with Andrew and from a general knowledge of his financial condition, Andrew was able to let his brother, Toombs, have or be responsible for the sum of $35,000. Both brothers testified that the transaction was bona fide and was not intended to hinder, delay, or defraud the creditors of Toombs, but was made in good faith for the purpose of securing Andrew in the sum of approximately $35,000, which he had advanced from time to time and become responsible for. After the transfer of the property in controversy Toombs made various payments upon the indebtedness to Andrew, but not sufficient to pay off the debt in full, or to any considerable extent. On the contrary the evidence discloses that Toombs was hopelessly insolvent; that he had made transfers of

all of his property to various members of his family (except the property in Florida, some of which was sold at sheriff's sale, and to some "I give a quitclaim deed and let it go"), including property to his daughter, which he claimed was in consideration of money borrowed from her, and the property involved in the present litigation, which was conveyed in a security deed to his brother, Andrew. It thus appears that Toombs divested himself of all of his belongings mainly to members of his family and relations, "except a few bedclothes and his license to preach." It also appears that he filed a petition in bankruptcy.

The plaintiff in error testified: "I have no idea in my own mind how much I have loaned Toombs, that he owes me, that I have paid out for him. I could not give the jury any idea about it in dollars and cents, but I have paid out as much as twenty or twenty-five thousand dollars." Both of the brothers testified that they had checks and notes before them from which the amount due was figured up at the time the security deed was executed, but only a portion of these checks and notes were produced. Many of the notes were renewals, and many bore dates subsequently to the deed. C. I. Reynolds, manager of the Reynolds Grocery Co., testified that Toombs McLendon told him in 1919 or the first of 1921, in reply to the question as to why he did not go to Andrew for money: "I don't owe Andrew anything and don't want to owe him anything. I paddle my own canoe, and don't have to go to Andrew." M. T. Gresham testified: "I says [to Toombs McLendon], 'How about getting your brother Andrew to let you have some?' [money], and he says, 'Well, I don't owe Andrew anything. I have paid him up, and I don't want to get mixed up with my brother any more. I am paddling my own canoe now, and I am able to finance my business, and I will be able to pay these claims off in a short while.'"

Without undertaking to enumerate all of the various circumstances from which the jury in the present case might infer fraud in the transaction in question, we mention a few as illustrating the question of fraud. (1) The conveyance from the one brother to the other was made at a time when Toombs McLendon was being sued by some of his creditors, including the plaintiff in fi. fa., and was being pressed by others. See, in this connection, *Booher* v. *Worrill, 57 Ga.* 235 (2); *Wise* v. *Moore, 31 Ga.* 148;

*Sharp* v. *Hicks,* 94 *Ga.* 624 (6) (21 S. E. 208); *Gregory* v. *Gray,* 88 *Ga.* 172 (14 S. E. 187); *Barber* v. *Terrell,* 54 *Ga.* 146 (5); *Clayton* v. *Tucker,* 20 *Ga.* 452. (2) In the second place the transaction was between near relatives — brothers. See, in this connection, *Cohen* v. *Parrish,* 100 *Ga.* 335 (2) (28 S. E. 122); *Woodruff* v. *Wilkinson,* 73 *Ga.* 115; *Smith* v. *Wellborn,* 75 *Ga.* 799; *Holbert* v. *Allred,* 24 *Ga. App.* 727 (102 S. E. 192). (3) It appears from the record that the grantor, Toombs McLendon, was insolvent "at or about that time." *Tillman* v. *Fontaine,* supra. (4) It appears that the grantor at or about the same time conveyed certain other property to different members of his family. The above are some of the circumstances appearing in the record from which the jury might infer that the transaction between the brothers was for the purpose of hindering, delaying, and defrauding the creditors of the defendant in fi. fa. The jury had all the witnesses before them, including the two brothers, and doubtless noted their manner of testifying and their demeanor upon the stand, and the trial judge had the same opportunity; and this court can not say that the finding of the jury is without evidence to support the verdict, or that the judgment of the trial court approving it is an abuse of discretion.

But it may be said that Civil Code (1910) § 3230 may apply to a case like the present. That section provides that a "debtor may prefer one creditor to another, and to that end may bona fide give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer choses in action as collateral security the surplus in such cases not being reserved for his own benefit." It will be observed that this section of the code is closely allied to the other sections mentioned above; and that in order to prefer one creditor to another, the debtor must bona fide give a lien, or sell, as the case may be. From the various circumstances enumerated, and others which are not brought out, we are of the opinion that the jury could infer that the transfer was not in good faith. But it is argued that even if Toombs McLendon did not transfer the property in good faith, yet if Andrew, the claimant, took the property without actual notice of the fact that Toombs was seeking to hinder, delay, or defraud his creditors, if Andrew did not know of that fact, or did not have reasonable cause to suspect that such was the case, Andrew would get a

good security deed.  But we are of the opinion, considering all the circumstances of the case, the pending suits against Toombs, the close relationship of the parties, and their many previous transactions in a business way, that the jury might infer from all these circumstances that Andrew had reasonable cause to suspect that Toombs was making this transfer in order to hinder, delay, and defraud his creditors.

Considering the facts of this case in the light of the rules laid down by this court on the subject, we are of the opinion that the court below did not err in refusing a new trial.

*Judgment affirmed.  All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*