27626. WILLIAMS *et al.* v. BABER.

DECIDED NOVEMBER 13, 1939.

*O. W. Roberts, Boykin & Boykin,* for plaintiffs in error.
*Willis Smith,* contra.

SUTTON, J. Roosevelt Baber filed suit against J. C. Williams in the circuit court of Cleburne County, Alabama, on August 12, 1936, and procured a judgment thereon against the said Williams

for the sum of $500 on November 4, 1936. Baber then filed suit on this foreign judgment against Williams in the city court of Carrollton on February 18, 1937, and on the same date garnisheed O. W. Roberts Jr. and R. T. Williams, as administrators of the estate of G. T. Williams. Roberts and R. T. Williams, as administrators, answered that they were not indebted to the defendant and had no funds in their hands belonging to him, and the plaintiff traversed both of these answers. 'J. C. Williams dissolved the garnishment by giving a bond for this purpose, and R. T. Williams and C. M. Morris signed the said bond as sureties. A verdict and judgment were rendered in the city court of Carrollton in favor of Roosevelt Baber against J. C. Williams at the December term, 1937. The issue made on the traverse of the answers to the garnishment came on for trial at the December term, 1938, of said court. The defendant moved for a continuance, which was overruled, and the case proceeded to trial and resulted in a verdict and judgment in favor of the traverse. The garnishees made a motion for new trial, which was overruled, and the exception here is to that judgment.

Counsel for the defendants made a motion to continue the case, and presented a certificate from a physician to the effect that the defendant J. C. Williams was his patient and that he was not able to be out in bad weather. Counsel for the plaintiff then testified that he had talked with this doctor over the telephone, and that he told him that J. C. Williams could make the trip to Carrollton all right if he would get some one to drive his car for him. The trial was postponed; the doctor was brought into court, and he testified: "J. C. Williams is my patient. I see him, not every day, but occasionally. I saw him last, I think, on Monday, December 12. His condition is about well, I might say he is as well as he was when he had the attack back in the spring. Q. Do you think he could come to town and stay a half day and attend to his business? A. We don't let him go off any place by himself. We don't let him drive his car out any distance by himself. Q. He could come down here to the court-house to attend to his business? A. He might come down here for an hour or so, but some one would have to drive his car. He is feeble, you know. He has not had an attack recently. Not a severe attack since the first part of the year. No, he has not had an attack recently. I keep him on treatment and

see him occasionally. It would not be safe for Mr. Williams to come down here if no one was looking after him. I do not know that he comes down here often. I have not seen him down here. He is suffering with cancer of the face." Counsel for the movants then stated that they could not safely go to trial without the presence of their client.

A motion for continuance is addressed to the sound discretion of the court, and where such discretion is not abused this court will not interfere with the ruling of the trial court. *Rothleutner* v. *Bateman*, 144 *Ga.* 103 (86 S. E. 215); *Strickland* v. *Strickland*, 147 *Ga.* 494 (94 S. E. 766). It was ruled in *Howell* v. *Bowen*, 27 *Ga. App.* 236 (107 S. E. 619): "The court did not abuse its discretion in refusing a continuance upon the ground of the defendant's absence from court when the case was called for trial, when it appeared from the evidence that the defendant 'could come to court but not without considerable pain,' and when it did not appear that such pain would interfere with his management of the case." Also see *Leathers* v. *Leathers*, 132 *Ga.* 211 (63 S. E. 1118), where the movant testified "she was about as well as usual; she had been in very bad health for near six months, some time up, but a great time in bed." In the present case the doctor testified that the defendant was able to go to court if some one would drive his car for him; that his condition was about the same as it had been since the early part of the year, and it was in December when he was testifying. In these circumstances the court did not abuse its discretion in overruling the motion to continue.

 The following represents the majority opinion of the court, from which I dissent: "In order for the plaintiff in this case to prevail, he must show that the transferee or assignee of the assignment of his brother's interest in the estate of their father to him was made with intent to defraud the plaintiff or that the transferee or assignee had reasonable grounds to suspect that such was the intention of his brother in making the assignment. The assignment recites a valuable consideration and this is not controverted. The only facts in the record which could possibly be relied on to show that the transferee or assignee had such knowledge, or reasonable grounds to suspect that the assignment was made to defraud the plaintiff, are that the assignment was made subsequently to the filing of the suit against his brother by the plain-

tiff, that the assignment was not witnessed and recorded until after the rendition of the judgment in Alabama in plaintiff's favor, that the judgment debtor and the assignee were brothers, and that the assignee, who was one of the executors of the estate of the father, did not apprise his coexecutor of the execution of this assignment from his brother until the date on which the estate was distributed and after the service of summons of garnishment upon the executors. The check to the judgment debtor for the share of the estate sold to the assignee was made payable to him and he immediately indorsed it over to the assignee. The other executor of the estate testified that the check was made payable to the judgment debtor because he wanted to keep the records straight, as there were eleven distributive shares. The judgment referred to was obtained in the State of Alabama, and there is nothing in the evidence to show that the assignee had any knowledge of the pendency of the suit or the rendition of the judgment at the time of the assignment, which was purportedly for a valuable consideration. Nor does anything appear from the evidence that would reasonably have caused him to suspect that the suit was pending and that his brother was making the assignment in fraud of the plaintiff. The judgment debtor was not put upon the stand to explain the transaction. The assignee is now dead. In these circumstances we are of the opinion that the evidence was insufficient to show that at the time of the assignment the transferee or assignee had any knowledge that the assignment was made to defraud the plaintiff or had any reason to suspect that such was the intention of his brother, the judgment debtor. The fact that the assignee signed the dissolution bond in the garnishment proceedings in his individual capacity could do no more than estop him individually.

"3. The court erred in overruling the motion for new trial."

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting. The plaintiff contended that the transfer by J. C. Williams to R. T. Williams of his interest in the estate of G. T. Williams was fraudulent, and was a scheme to defeat the plaintiff's claim and judgment against J. C. Williams. "While fraud may not be presumed, yet being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Civil Code (1910), § 4626 [Code of 1933, § 37-706]. A conveyance made with the intention of hindering, delaying, or

defrauding creditors is void as against creditors. § 3224, par. 2 [Code of 1933, § 28-201 (2)]. If the transaction is bona fide and on a valuable consideration, and the party taking has no notice or ground for reasonable suspicion of the intention to hinder, delay, or defraud creditors, the conveyance is valid. The converse of the proposition is true, that if the party taking has notice of the intention of the maker to hinder, delay, or defraud his creditors, or has ground for reasonable suspicion of such intention, the conveyance is void as against the creditors of the maker. . . A deed is void as to creditors, though the grantor is not insolvent at the time of making it, if his purpose is to hinder, delay, or defraud his creditors. [Citing.] It has also been held by this court that if the deed was made with intent to hinder, delay, or defraud the creditors of the grantor, or any one of them, and this fact was known to the grantee, or the grantee had reasonable ground to suspect that such was the intention of the grantor, the deed would be void as to creditors, even though it was given on a valuable consideration. *Conley* v. *Buck,* 100 *Ga.* 187 (2), 205 (28 S. E. 97) ; *Peck* v. *Land,* 2 *Ga.* 1 (3) (46 Am. D. 368). A sale of land by a debtor in the face of a pending lawsuit against him is a circumstance which the jury may consider on the trial of the issue as to whether the sale was fraudulent against his creditors." (Citing.) *McLendon* v. *Reynolds Grocery Co.,* 160 *Ga.* 763, 765 (129 S. E. 65)`. Also see *Gunn* v. *Chapman,* 166 *Ga.* 279 (142 S. E. 873).

But the plaintiff in error contends that the verdict in favor of the traverse to the answers of the defendants to the garnishment is without evidence to support it. Let us look to the evidence. The plaintiff introduced in evidence the verdict and judgment obtained in the city court of Carrollton in favor of Roosevelt Baber against J. C. Williams for $500 and interest; the original affidavit and bond for garnishment, together with entry of service; the bond given to dissolve the garnishment, signed by J. C. Williams; a check payable to J. C. Williams for $1200, dated March 22, 1937, signed by O. W. Roberts Jr. and R. T. Williams, as administrators of the estate of G. T. Williams; a certified copy of the original suit in Cleburne County, Alabama, which was filed on August 12, 1936, and on which judgment was rendered on November 4, 1936. The defendant introduced in evidence a transfer or assignment

from J. C. Williams to R. T. Williams, as follows: "Temple, Georgia, August 27, 1936. For and in consideration of the sum of fifteen hundred dollars ($1500) in hand paid, I hereby sell, convey, and deliver to R. T. Williams my entire interest both real and personal in the estate of G. T. Williams. The said estate consisting of lands, notes, and accounts, and now being administered on by R. T. Williams and J. W. Stone. Witness my hand and seal, this Aug. 27, 1936. [Signed] J. C. Williams (Seal). [Witnessed by] Robert T. Hixon, C. N. P. (Seal). Witness: 11/14/36, Mary B. Rooks, T. J. H. Robertson, Clerk (Seal)."

O. W. Roberts testified for the defendant as follows: "I made this check for $1200 payable to J. C. Williams. Mr. J. C. Williams and Mr. R. T. Williams came to my office on this day, March 22, 1937, for their distributive share of G. T. Williams's estate. R. T. Williams produced the contract that has been introduced, which was the first time I had seen the contract, and I said the return would show eleven distributive shares, eleven equal parts, the estate was divided into eleven equal parts and I wanted my records to show that each of the eleven received their distributive shares, and what they did with it was not any concern of mine. I was not passing on the contract, but I made the check to J. C. Williams, and upon his request wrote the indorsement on the back in compliance with the contract which was signed by J. C. Williams and then and there turned over to R. T. Williams. As to Mr. Williams's distributive share of the estate of G. T. Williams, the amount of $1200, this is right; yes, I made the check. I believe your garnishment was in February, and the distribution was made in March. I knew nothing of the contract between J. C. Williams and R. T. Williams, never saw it before, saw it the first time the day they brought it up there and presented it to me in the office. I had nothing to do with it and never saw it before."

J. C. Williams and R. T. Williams were brothers and were heirs of the estate of G. T. Williams, deceased. It appears from the evidence that the transfer by J. C. Williams of his interest in the G. T. Williams estate to R. T. Williams was made after the suit of Baber against J. C. Williams was filed in Alabama, and this transfer was witnessed and recorded in Carroll County, Georgia, after judgment was obtained by Baber against Williams on the suit in Alabama. The check for $1200 for the distributive share of

J. C. Williams in the G. T. Williams estate was made by R. T. Williams and O. W. Roberts Jr., administrators of said estate, to J. C. Williams more than a month after these administrators had been served with the garnishment. However, O. W. Roberts Jr. testified that J. C. and R. T. Williams took the above-mentioned transfer to him when they went for their distributive share on March 22, 1937, and this was the first time that he had ever seen or heard of it; that he wanted his records to show that each of the heirs received his share and he wrote the check to J. C. Williams, and, at his request, wrote the indorsement on the back which was signed by J. C. Williams, and then and there turned it over to R. T. Williams. The facts that the transfer in question was made while the suit of Baber against J. C. Williams was pending and that this transfer was made between near relatives, brothers, are circumstances which the jury could consider, and from which they might infer that the transfer was fraudulent against the creditors of J. C. Williams. *Virginia-Carolina Chemical Co.* v. *Hollis*, 23 *Ga. App.* 634 (99 S. E. 154) ; *McLendon* v. *Reynolds Grocery Co.*, supra. Under the law and the evidence, I am of the opinion that the jury was authorized to find in favor of the traverse of the answers to the garnishment. I think the judgment should be affirmed.